MICHIGAN ASSOCIATION OF CHIROPRACTORS v BLUE CARE
NETWORK OF MICHIGAN, INC

Docket No. 304783. Submitted February 12, 2013, at Lansing. Decided
April 18, 2013, at 9:15 a.m.

The Michigan Association of Chiropractors (MAC), a voluntary trade
association representing the interests of approximately 1,600
chiropractic doctors in Michigan, and Nicholas S. Griffiths, D.C., a
licensed chiropractic doctor with offices in Wayne County, brought
an action in the Ingham Circuit Court against Blue Care Network
of Michigan, Inc. (BCN), a health maintenance organization
licensed under chapter 35 of the Insurance Code, MCL 500.3501 *et
seq*. Plaintiffs alleged that BCN openly and illegally discriminates
against its network's chiropractic physicians by failing to reim-
burse them for services for which it reimburses its other network
physicians and that BCN's discriminatory practices effectively
limit the number of chiropractic physicians that can be network
providers. The complaint alleged three counts. Count I alleged
that the policies and practices of BCN and its member physicians
unlawfully limit the access chiropractic physicians have to the
provider network and its members by maintaining an insufficient
network of chiropractic care providers and by actively directing its
members to seek chiropractic services from physicians through its
website and referrals by its member physicians. Count II alleged
two ways BCN discriminates in reimbursing network chiropractic
physicians: (1) by reimbursing nonchiropractors providing certain
services yet refusing to reimburse chiropractic physicians provid-
ing those same services (or imposing frequency limits on those
services), and (2) by refusing to reimburse chiropractic physicians
for providing other services within the scope of chiropractic
medicine, such as physical-therapy services. Count III alleged that
BCN's illegally discriminatory policies and practices constituted a
breach of contract because the affiliation agreement its network
chiropractors must each sign includes a clause requiring BCN to
"perform the legal and regulatory functions required" under state
and federal law. Plaintiffs sought a declaratory judgment with
regard to all three counts and "damages caused by such breaches
of contract" with regard to count III. Plaintiffs moved to have the
action certified as a class action, proposing five separate classes for

certification. Class 1 consisted of "those chiropractors who have ever applied for membership in BCN and were denied membership." Class 2 consisted of "those chiropractors who at one time were members of BCN but who were disaffiliated from BCN against their will." Class 3 consisted of "those chiropractors who have not sought membership with BCN because doing so would be futile given BCN's open practice of not allowing chiropractors to become members of BCN." Class 4 consisted of "those chiropractors who are, or have been members of BCN, and who have suffered harm due to BCN's policy of requiring its insureds to obtain a referral before seeing a chiropractor and BCN's open policy of discouraging referrals to chiropractors." Class 5 consisted of those "chiropractors who have been economically harmed as a result of BCN's policies" that "include, but are not limited to, refusing to reimburse chiropractors for services within their scope of work, reimbursing other providers for these same services, burdensome deductibles and imposing burdensome copays on insureds who utilize chiropractors driving patients away from chiropractic care." Plaintiff's brief submitted with the motion included a table identifying their estimates of the size of each class, based on a survey of MAC members and extrapolated "by multiplying the percentage of those who responded in each proposed class by the total number of chiropractors in the state." The estimates ranged from several hundred members to over 1,500 members. Plaintiffs asserted that common questions of law and fact predominated in the matter, including whether BCN unlawfully discriminated against chiropractors by denying access to the network, by requiring referrals to chiropractors and promoting a policy of refusing referrals to chiropractors, and by refusing to reimburse chiropractors for the same services for which it reimbursed other providers. Plaintiffs also offered the affidavit of Dr. Griffiths as a representative plaintiff. BCN argued against class certification, asserting, in part, that individual facts predominated over the common questions in the matter. The court, Paula J. M. Manderfield, J., disagreed with BCN and concluded that the initial question to be answered—whether BCN had engaged in particular policies—did not require an examination of individuals' circumstances. The court also determined that Dr. Griffiths satisfied the typicality requirements for representing all the classes. The Court of Appeals granted BCN's delayed application for leave to appeal. *Mich Ass'n of Chiropractors v Blue Care Network of Mich*, unpublished order of the Court of Appeals, entered February 22, 2012 (Docket No. 304783).

The Court of Appeals *held*:

1. Certification of a class is controlled by MCR 3.501(A)(1), which contains prerequisites relating to numerosity, commonality,

typicality, adequacy, and superiority. The action must meet all the prerequisites of the court rule in order to proceed as a class action. The court may not simply accept as true a party's bare statement that a prerequisite is met without making an independent determination that basic facts and law are stated adequately to support the prerequisite. If the pleadings are not sufficient, the court must consider additional information beyond the pleadings to determine whether class certification is proper.

2. Plaintiff's seeking class certification must provide objective criteria by which class membership is to be determined. Application of this rule requires the Court of Appeals to decertify Class 3 because membership cannot be established without knowing the subjective reason why each chiropractor gave up on the quest to affiliate with BCN.

3. The requirement of Class 2 that members are those who have been disaffiliated against their will is not problematic as long as plaintiffs can document whether an affiliation was terminated by the chiropractor or by BCN. If, on remand, plaintiffs cannot provide such evidence, the trial court must decertify Class 2.

4. The definition of Class 5 is overly broad. As written, any BCN policy that causes financial harm could be at issue, for example, a refusal to reimburse untimely claims. Because it appears that plaintiffs did not intend such a broad definition, the definition may be narrowed by adding language so that the class consists of "chiropractors who have been economically harmed as a result of BCN's policies that unlawfully discriminate against chiropractors. These polices include, but are not limited to, refusing to reimburse chiropractors for services within the scope of their work, reimbursing other providers for these same services, burdensome deductibles and imposing burdensome copays on insureds who utilize chiropractors driving patients away from chiropractic care."

5. Each of the counts presents an opportunity to provide class-wide, declaratory answers to the legal questions plaintiffs raise. The commonality and typicality requirements of MCR 3.501(A)(1) are met for the declaratory judgment aspects of the case.

6. Aspects of the retrospective compensatory relief plaintiffs seek require an examination of individual circumstances for each purported class member. Plaintiffs did not establish that their claims for retrospective compensatory relief satisfy the class certification requirements of MCR 3.501(A)(1). The trial court should have bifurcated the declaratory claims and certified properly defined classes for the declaratory claims only. Because of the

unsuitability of the retrospective compensatory claims for class certification, the trial court abused its discretion by allowing certification of the classes for plaintiffs' entire complaint.

7. Dr. Griffiths was never denied membership in BCN and thus is not a member of Class 1 as proposed by plaintiffs. He is not qualified to represent Class 1. The trial court should not have certified Class 1 as defined in the complaint with Dr. Griffiths as its representative. However, plaintiffs intended Class 1 to have a broader scope than is allowed by the specific wording they proposed. The trial court should have set forth a more suitable definition of the class pursuant to MCR 3.501(B)(3)(c). Therefore, under the authority granted by MCR 7.216(A)(1), the Court of Appeals modified the definition of Class 1 so that it encompasses "those chiropractors who have ever applied for membership in BCN and were denied membership or whom BCN denied the opportunity to apply."

8. The trial court's order granting certification for the following classes (as modified in the opinion of the Court of Appeals) must be affirmed:

Class 1: The first class consists of those chiropractors who have ever applied for membership in BCN and were denied membership or whom BCN denied the opportunity to apply.

Class 2: The second class consists of those chiropractors who at one time were members of BCN but who can show by objective proof that they were disaffiliated from BCN against their will.

Class 3: The third class consists of those chiropractors who are, or have been, members of BCN and who have suffered harm because of BCN's policy of requiring its insureds to obtain a referral before seeing a chiropractor and BCN's open policy of discouraging referrals to chiropractors.

Class 4: The fourth class consists of those chiropractors who have been economically harmed as a result of BCN's policies that unlawfully discriminate against chiropractors. These policies include, but are not limited to, refusing to reimburse chiropractors for services within their scope of work, reimbursing other providers for these same services, burdensome deductibles, and imposing burdensome copays on insureds who utilize chiropractors driving patients away from chiropractic care.

Affirmed in part, reversed in part, and remanded.

ACTIONS — CLASS ACTIONS — CLASS CERTIFICATION — OBJECTIVE CRITERIA.

Plaintiffs seeking class certification must provide objective criteria by which class membership is to be determined.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Richard A. Gaffin* and *Kenneth T. Brooks*), for plaintiffs.

*Dickinson Wright PLLC* (by *Joseph A. Fink, Jeffery V. Stuckey,* and *Scott R. Knapp*) and *Nicole M. Wotlinski* for defendant.

Before: FITZGERALD, P.J., and METER and M. J. KELLY, JJ.

FITZGERALD, P.J. Defendant, Blue Care Network of Michigan, Inc. (BCN), appeals by leave granted the order granting the motion of plaintiffs, Michigan Association of Chiropractors (MAC), also known as the Chiropractic Association of Michigan, and Nicholas S. Griffiths, D.C., for certification of five classes of plaintiffs. This case was submitted and argued with *Mich Ass'n of Chiropractors v Blue Cross Blue Shield of Mich*, 300 Mich App 551; ___ NW2d ___ (2013). Defendant here asserts that four of plaintiffs' five proposed classes were improperly certified because the class definition is fundamentally flawed and that all classes were improperly certified because plaintiffs have not satisfied the commonality and typicality requirements of MCR 3.501(A)(1). For the reasons given hereinafter, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

The complaint in this case alleges that MAC is a voluntary trade association representing the interests of approximately 1,600 chiropractic doctors in Michigan. Dr. Griffiths is a licensed chiropractic doctor with offices in Wayne County. BCN is a Michigan health maintenance organization (HMO) licensed under chapter 35 of the Michigan Insurance Code, MCL 500.3501

*et seq*. It has nearly a half-million enrollees. Over 400 MAC members are members of BCN's provider network. However, before January 1, 2006, BCN had virtually no chiropractic physicians in its network. After January 1, 2006, it began providing reimbursement for chiropractic services only when they were provided by network chiropractic physicians, but at that time it had only 17 network chiropractic physicians. The essence of the complaint is that BCN openly and illegally discriminates against its network's chiropractic physicians by failing to reimburse them for services for which it reimburses its other network physicians and that its discriminatory practices effectively limit the number of chiropractic physicians that can be network providers.

## II. THE COMPLAINT AND PROPOSED CLASSES

In their complaint, plaintiffs allege that BCN violated the Michigan Insurance Code in a number of ways. Plaintiffs claim that BCN has a practice of not paying chiropractic providers for covered chiropractic services while it pays other nonchiropractic providers for providing the same services and that its discriminatory practices illegally limit patient access to chiropractic services. The complaint states three counts. Count I alleges that the policies and practices of BCN and its member physicians unlawfully limit the access chiropractic physicians have to the provider network and its members by maintaining an insufficient network of chiropractic care providers and by actively directing its members to seek chiropractic services from nonchiropractic physicians through its website and through referrals by its member physicians. Count II alleges two ways BCN discriminates in reimbursing network chiropractic physicians: (1) by reimbursing nonchiropractors

providing certain services yet refusing to reimburse chiropractic physicians providing those same services (or imposing frequency limits on those services), and (2) by refusing to reimburse chiropractic physicians for providing other services within the scope of chiropractic medicine, such as physical-therapy services. Count III alleges that BCN's illegally discriminatory policies and practices constitute a breach of contract because the affiliation agreement its network chiropractors must each sign includes a clause requiring BCN to "perform the legal and regulatory functions required" under state and federal law. Plaintiffs sought a declaratory judgment on all counts and, for count III, "damages caused by such breaches of contract."

Plaintiffs moved for class certification, proposing five separate classes for certification:

Class 1: The first class consists of those chiropractors who have ever applied for membership in BCN and were denied membership.

Class 2: The second class consists of those chiropractors who at one time were members of BCN but who were disaffiliated from BCN against their will.

Class 3: The third class consists of those chiropractors who have not sought membership with BCN because doing so would be futile given BCN's open practice of not allowing chiropractors to become members of BCN.

Class 4: The fourth class consists of those chiropractors who are, or have been members of BCN, and who have suffered harm due to BCN's policy of requiring its insureds to obtain a referral before seeing a chiropractor and BCN's open policy of discouraging referrals to chiropractors.

Class 5: The final class consists of chiropractors who have been economically harmed as a result of BCN's policies. These policies include, but are not limited to, refusing to reimburse chiropractors for services within their scope of work, reimbursing other providers for these

same services, burdensome deductibles and imposing burdensome copays on insureds who utilize chiropractors driving patients away from chiropractic care.

Plaintiffs' motion brief includes a table identifying their estimates of the size of each class, based on a survey of MAC members and extrapolated "by multiplying the percentage of those who responded in each proposed class by the total number of chiropractors in the state." The estimates range from several hundred members to over 1,500 members.

Plaintiffs asserted that common questions of law and fact predominate in the matter, and they identified those questions as:

1) whether BCN unlawfully discriminated against chiropractors by denying access to the network, 2) whether BCN unlawfully discriminated against chiropractors by requiring referrals to chiropractors and promoting a policy of refusing referrals to chiropractors, and 3) whether BCN discriminated against chiropractors by refusing to reimburse chiropractors for the same services it reimbursed other providers for.

In support of the motion, plaintiffs offered the affidavit of Dr. Nicholas S. Griffiths as a representative plaintiff. He averred that he had been a BCN member starting in 2004, but he was "disaffiliated" in early 2006. He stated, "Many of my patients left my practice." He asserted that BCN at first refused to send him an application, but he persisted despite the apparent futility, and eventually he was sent an application and was accepted back into the network in January 2007. Dr. Griffiths further alleged that he was dependent on getting referrals from primary care physicians and sometimes they refused to refer patients for chiropractic care. In addition, he also asserted that he had problems getting reimbursed by BCN "for services it is required to cover."

Defendant argued against class certification, asserting that individual facts predominated over common questions. It stated that the limitation on access to its network was not discrimination per se and therefore each denial or disaffiliation required an examination of the individual circumstances. It further asserted that the class definitions were too broad, conflicted, and unworkable. And, defendant argued, if BCN's plans have been approved by the Office of Financial and Insurance Regulation (now the Department of Insurance and Financial Services), as required by statute, any complaints about coverage should come from that department or from BCN's insured members, not from chiropractors who have no contract with BCN.

The trial court disagreed. In a written opinion, the court concluded that the initial question to be answered in the suit—whether defendant had engaged in particular policies—did not require the examination of individuals' circumstances. The court also determined that Dr. Griffiths satisfied the typicality requirement. Defendant filed a delayed application for leave to appeal, which we granted, limited to the issues raised in the application.[1]

### III. STANDARD OF REVIEW

Interpretation of MCR 3.501(A) presents a question of law that we review de novo. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). The analysis a court must undertake regarding class certification may involve making both factual findings and discretionary decisions. *Id.* at 495-496. We review the trial court's factual findings for clear error and the decisions

---

[1] *Michigan Ass'n of Chiropractors v Blue Care Network of Mich*, unpublished order of the Court of Appeals, entered February 22, 2012 (Docket No. 304783).

that are within the trial court's discretion for an abuse of discretion. *Id*. The burden of establishing that the requirements for a certifiable class are satisfied is on the party seeking to maintain the certification. *Tinman v Blue Cross & Blue Shield of Mich*, 264 Mich App 546, 562; 692 NW2d 58 (2004); see also *Henry*, 484 Mich at 509.

### IV. MCR 3.501(A)(1)

Certification of a class is controlled by court rule. Under MCR 3.501(A)(1), one or more members of a purported class may file suit on behalf of all members only if:

(a) the class is so numerous that joinder of all members is impracticable;

(b) there are question of law or fact common to the members of the class that predominate over questions affecting only individual members;

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d) the representative parties will fairly and adequately assert and protect the interests of the class; and

(e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

These prerequisites are often referred to as numerosity, commonality, typicality, adequacy, and superiority. *Henry*, 484 Mich at 488. "[T]he action must meet *all* the requirements in MCR 3.501(A)(1); a case cannot proceed as a class action when it satisfies only some, or even most, of these factors." *A&M Supply Co v Microsoft Corp*, 252 Mich App 580, 597; 654 NW2d 572 (2002).

Although the federal " 'rigorous analysis' " approach does not apply under our state law, "a certifying court may not simply 'rubber stamp' a party's allegations that the class certification prerequisites are met." *Henry*, 484 Mich at 502. The court's decision to certify may be based on the pleadings alone only if the averments therein satisfy the party's burden of proving that the requirements of MCR 3.501 are met, "such as in cases where the facts necessary to support this finding are uncontested or admitted by the opposing party." *Henry*, 484 Mich at 502-503. The court "may not simply accept as true a party's bare statement that a prerequisite is met" without making an independent determination that basic facts and law are stated adequately to support that prerequisite. *Id.* at 505. "If the pleadings are not sufficient, the court must look to additional information beyond the pleadings to determine whether class certification is proper." *Id.* at 503. The court should analyze asserted facts, claims, defenses, and relevant law, but "should avoid making determinations on the merits of the underlying claims at the class certification stage of the proceedings." *Id.* at 488; see also *id.* at 504.

Precedential caselaw on the subject of certification is thin in Michigan. *Henry*, the lead case in Michigan on class certification, involved allegations that the defendant, Dow Chemical Company, had negligently released dioxin into the Tittabawassee River. The plaintiffs sought certification of a class of "persons owning real property within the 100-year flood plain of the Tittabawassee River on February 1, 2002," estimated by the plaintiffs to consist of approximately 2,000 persons. *Id.* at 491. The trial court held a two-day hearing in which it reviewed numerous scientific studies, affidavits from experts, and state-agency-provided information from both parties. The Michigan Supreme Court concluded

that, although the trial court's analyses of the prerequisites identified in MCR 3.501(A)(1)(a), (b), and (e) were sufficient, the record was insufficient to determine if the trial court had made a valid, independent determination regarding the typicality and adequacy prerequisites of MCR 3.501(A)(1)(c) and (d). *Henry*, 484 Mich at 506. Accordingly, the case was remanded for clarification of the trial court's analysis of those two prerequisites. *Id.* at 509. Thus, although *Henry* sets out the details of the proper test under the court rule, it provides little guidance in applying the prerequisites.

## V. CLASS DEFINITION

Defendant first argues that all classes except Class 1 impermissibly require a subjective assessment or a determination of the merits in order to ascertain class membership. Further, defendant argues, because Class 2 includes chiropractors disaffiliated "against their will" and Class 3 includes those who thought applying for membership was "futile," the only way to determine who is a class member is to probe each individual's subjective thoughts. Defendant additionally asserts that the definitions of Classes 4 and 5 are defective because they require an examination of the merits (i.e., whether BCN has discriminatory policies) in order to determine who is in the class.

Defendant relies on *Tinman*, 264 Mich App 546, arguing that the classes sought here are analogous to the class this Court decertified in that case. The *Tinman* class was defined as:

"[A]ll persons who, during the period from June 9, 1998, through the present, were, are and will be entitled to receive health care benefits from Blue Cross & Blue Shield of Michigan (BCBSM) for emergency health care services, but were, or will be, denied health care benefits for

emergency health care services by BCBSM based on the final diagnosis of their medical condition (excluding any officers or directors of BCBSM, and their family members)." [*Id.* at 552-553.]

The trial court in *Tinman* had found that the predominant issue was whether BCBSM's " 'systematic practice' " of denial on the basis of the final diagnosis of a medical condition violated statutory law and the certificates it issued and that this was a common question of fact and law meeting the requirements of MCR 3.501(A)(1)(b). *Tinman*, 264 Mich App at 563. This Court disagreed, concluding:

Rather than being subject to generalized proofs, the evidence of the type of emergency health services and medically necessary services provided, the medical conditions involved and whether they occurred suddenly, the signs and symptoms that manifested those medical conditions, and whether payment was denied for services up to the point of stabilization will all vary from claimant to claimant. Thus, it is evident that to determine defendant's liability, highly individualized inquiries regarding the circumstances relevant to each claim clearly predominate over the more broadly stated common question in this case. [*Id.* at 564-565.]

Defendant asserts that what plaintiffs seek here is no different from what was sought in *Tinman* because establishing each loss attributable to BCN's affiliation and referral policies depends on individual assessments. However, it can also be argued that the landscape in this case is slightly different from *Tinman* because of the allegations that defendant has organization-wide policies that violate various statutes in the Insurance Code. Rather than viewing defendant's conduct as resulting from a series of individual decisions, defendant's conduct can be seen largely as showing that it adhered to a single policy of discrimination that affected many pro-

vider and nonprovider chiropractors in the same way. Like the declaratory issues in *Mich Ass'n of Chiropractors*, this broad, legal question is more suited to class resolution than the issue in *Tinman* because of the desirability of consistent results for all potential plaintiffs.

However, unlike the class definition in *Mich Ass'n of Chiropractors*, some of the class definitions in this case require an examination of subjective factors, such as whether a practitioner believed it futile to seek membership in BCN. Under federal law, class membership must be determined by objective criteria. See *Garrish v UAW*, 149 F Supp 2d 326, 330-331 (ED Mich, 2001), citing 5 Moore's Federal Practice, § 23.21[1] (3d ed, 1998).[2] We agree that this rule is sound, because otherwise individuals would simply be able to decide for themselves whether they wish to be included in the class, and we hold that plaintiffs seeking class certification must provide objective criteria by which class membership is to be determined.

Applying this rule to plaintiffs' proposed classes requires us to decertify Class 3 because membership cannot be established without knowing the subjective reason why each chiropractor gave up on the quest to affiliate with BCN. Class 2's requirement that members are those who have been disaffiliated "against their will" is not problematic as long as plaintiffs can document whether an affiliation was terminated by the chiropractor or by BCN. If they cannot provide such evidence on remand, the trial court should decertify Class 2 as well. As for the other classes, any

[2] See also 5 Moore's Federal Practice, § 23.21[3][a] (3d ed, 2013), p 23-46 ("For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.").

problems in certification arise from establishing the requirements of the court rule, not from the definitions themselves.

However, we also find that the definition of Class 5 is overly broad. As written, any BCN policy that causes financial harm could be at issue, for example, a refusal to reimburse untimely claims. In the context of plaintiffs' complaint, it appears that such a broad definition was not intended. We therefore narrow that definition by adding the following italicized text so that the class consists of "chiropractors who have been economically harmed as a result of BCN's policies *that unlawfully discriminate against chiropractors*. These policies include, but are not limited to, refusing to reimburse chiropractors for services within their scope of work, reimbursing other providers for these same services, burdensome deductibles and imposing burdensome copays on insureds who utilize chiropractors driving patients away from chiropractic care."

In sum, we hereby adopt the federal "objective criteria" requirement stated in *Garrish*, 149 F Supp 2d at 330-331. In accord with this, we reverse the trial court's decision, in part, modify the definition of Class 5 as stated above, order plaintiffs to provide evidentiary support for Class 2 as described above, and decertify Class 3 because it requires reliance on subjective criteria. See *Citizens for Pretrial Justice v Goldfarb*, 415 Mich 255, 272; 327 NW2d 910 (1982) (court may redefine a class so it meets requirements for certification). The other classes need not be decertified on the basis of their definitions alone.

## VI. COMMONALITY AND TYPICALITY

Defendant next argues that plaintiffs failed to satisfy the elements of commonality and typicality. Defendant

asserts that each of the classes requires an improper, individualized determination of membership and that for each class, no proofs supporting Dr. Griffiths's claims (or the claims of another potential representative individual) would help establish that any other class member had suffered the same injury.

Under MCR 3.501(A)(1)(b), a prerequisite for a certifiable class action suit is that "there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members[.]" This Court in *Tinman* explored the issue of common questions:

> The common question factor is concerned with whether there is a common issue the resolution of which will advance the litigation. . . . It requires that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.
>
> . . . It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. A plaintiff seeking class-action certification must be able to demonstrate that all members of the class had a common injury that could be demonstrated with generalized proof, rather than evidence unique to each class member . . . . [T]he question is . . . whether the common issues [that] determine liability predominate. [*Tinman*, 264 Mich App at 563-564 (citations and quotation marks omitted; alterations by *Tinman*).]

The claims of class members

> must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

> "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." [*Wal-Mart Stores, Inc v Dukes*, 564 US ___, ___; 131 S Ct 2541, 2551; 180 L Ed 2d 374, 389-390 (2011), quoting Nagareda, *Class certification in the age of aggregate proof*, 84 NY U L R 97, 132 (2009).]

Each of the counts here presents an opportunity to provide class-wide, declaratory answers to the legal questions plaintiffs raise in their claims. Thus, for the declaratory aspects of the case, the commonality and typicality requirements are met.

The retrospective compensatory relief aspects, however, require an examination of individual circumstances. The reasons for denying or terminating affiliation in each case and for denying reimbursement have no common answer, and like the claim in *Tinman*, require an individual inquiry for each purported class member. Although the parties discussed a two-part approach to the case, the trial court did not appear to consider bifurcation. We conclude that the trial court should have bifurcated the declaratory claims and certified properly defined classes for that relief only. MCR 3.501(B)(3)(d)(i) states that a court may order that "the action be maintained as a class action limited to particular issues or forms of relief[.]" While this is a discretionary rule, because of the unsuitability of the retrospective compensatory claims for class certification, the trial court abused its discretion by allowing certification of the classes for plaintiffs' entire complaint.

As for the typicality requirement, once the issues to be tried as a class action are limited to resolving only the legal questions, most of the asserted problems with Dr. Griffiths's representation disappear. His affidavit

asserts that he was affected by the allegedly discriminatory reimbursement and referral policies and practices here in dispute. And he averred that he was "disaffiliated" from BCN at one point and had to persist in order to be sent another application form. However, he was never denied membership in the network and thus is not a member of Class 1 as proposed by plaintiffs. Accordingly, he is not qualified to represent Class 1, and the trial court should not have certified Class 1 as defined in the complaint with Dr. Griffiths as its representative. *A&M Supply Co*, 252 Mich App at 598.

The trial court relied on the rule derived from federal law, stating: "To meet the typicality requirement, a plaintiff must show that the representative's claim arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and that it is based on the same legal theory." See *Allen v City of Chicago*, 828 F Supp 543, 553 (ND Ill, 1993). The court then concluded that the "crux of Plaintiffs' claims" was "a series of discriminatory policies" with a particular policy identified with regard to each class. The court determined that the typicality requirement was met for Class 1 because "Dr. Griffiths was repeatedly denied access to Blue Care Network before ultimately being admitted to membership." That, however, is not in accord with the language proposed by plaintiffs for Class 1, which limits the class to chiropractors who "applied for membership in BCN and were denied membership." After examining plaintiffs' exposition of the facts and its related argument, we conclude that the problem lies not with plaintiffs' representative but in its class definition. Plaintiffs' brief emphasizes "BCN's Exclusion of Chiropractors From its Network," and they assert that "it denied requests by chiropractors to join the chiropractic network and claimed that its network was sufficient." While this conduct

clearly includes receiving and then denying applications for membership, it also includes any policy or practice of refusing to make applications available to chiropractors. Notably, if allegations of the latter are true, defendant may be in violation of MCL 500.3531(3), which prohibits it from denying a provider "an opportunity to apply" to become an affiliated provider.[3]

We therefore conclude that plaintiffs intended Class 1 to have a broader scope than is allowed by the specific wording they proposed. The trial court, rather than disregarding the fact that Dr. Griffiths had never had an application for membership denied, should have set forth a more suitable definition of the class, pursuant to MCR 3.501(B)(3)(c). Under the authority granted us by MCR 7.216(A)(1), we modify the definition of Class 1 so that it encompasses "those chiropractors who have ever applied for membership in BCN and were denied membership or whom BCN denied the opportunity to apply."

### VII. CONCLUSION

We conclude that, when examining a proposed class for certification, a court must be able to resolve the question whether class members are included or excluded from the class by reference to objective criteria. In addition, in the present case, plaintiffs did not establish that their claims for retrospective compensatory relief satisfy the class certification requirements set out in MCR 3.501(A)(1). The trial court should have bifurcated the declaratory claims; it abused its discretion by allowing certification of the classes for plaintiffs' entire complaint.

---

[3] In full, the subsection states: "A health maintenance organization shall give all health care providers that provide the applicable health maintenance services and are located in the geographic area served by the health maintenance organization an opportunity to apply to the health maintenance organization to become an affiliated provider."

In accord with the reasons given above, we affirm the trial court's order granting certification for the following classes and for declaratory relief only:

Class 1: The first class consists of those chiropractors who have ever applied for membership in BCN and were denied membership or whom BCN denied the opportunity to apply.

Class 2: The second class consists of those chiropractors who at one time were members of BCN but who can show by objective proof that they were disaffiliated from BCN against their will.

Class 3: The third class consists of those chiropractors who are, or have been, members of BCN and who have suffered harm because of BCN's policy of requiring its insureds to obtain a referral before seeing a chiropractor and BCN's open policy of discouraging referrals to chiropractors.

Class 4: The fourth class consists of those chiropractors who have been economically harmed as a result of BCN's policies that unlawfully discriminate against chiropractors. These policies include, but are not limited to, refusing to reimburse chiropractors for services within their scope of work, reimbursing other providers for these same services, burdensome deductibles, and imposing burdensome copays on insureds who utilize chiropractors driving patients away from chiropractic care.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

METER and M. J. KELLY, JJ., concurred with FITZGERALD, P.J.