DUSKIN v DEPARTMENT OF HUMAN SERVICES

Docket No. 310353. Submitted March 11, 2014, at Lansing. Decided
April 1, 2014, at 9:00 a.m. Leave to appeal sought.

Rodney Duskin and other racial and ethnic minority males employed
by the Department of Human Services brought an action against
the department in the Ingham Circuit Court, alleging discrimina-
tion based on race, ethnicity, and gender with respect to promo-
tions to supervisory and managerial positions. The court, Beverley
Nettles-Nickerson, J., granted plaintiffs' motion for certification of
a class of plaintiffs comprised of all minority male employees of the
department. The department appealed by leave granted. The
Court of Appeals, SAAD, C.J., and FITZGERALD and BECKERING, JJ.,
reversed. 284 Mich App 400 (2009). In lieu of granting leave to
appeal, the Michigan Supreme Court vacated the Court of Appeals
decision and remanded the case to the trial court for reconsidera-
tion. 485 Mich 1064 (2010). On remand, the trial court, Rosemarie
E. Aquilina, J., again certified the class. The Court of Appeals
granted the department's application for leave to appeal.

The Court of Appeals *held*:

1. Members of a class may only sue or be sued as representa-
tives of all class members if they meet the requirements of MCR
3.501(A)(1), which are (1) the class is so numerous that joinder of
all members is impracticable, (2) there are questions of law or fact
common to the members of the class that predominate over
questions affecting only individual members, (3) the claims or
defenses of the representative parties are typical of the claims or
defenses of the class, (4) the representative parties will fairly and
adequately assert and protect the interests of the class, and (5) the
maintenance of the action as a class action will be superior to other
available methods of adjudication in promoting the convenient
administration of justice. These prerequisites are often referred to
as numerosity, commonality, typicality, adequacy, and superiority.

2. The proponent of class certification need not show a particular
number of members to establish numerosity, but must adequately
define the class so potential members can be identified and must
establish by reasonable estimate the number of class members. The
proponent must also establish that a sizeable number of the class

members have suffered an actual injury. In this case, the proposed class of 586 individuals consisted of all minority males employed by the department with the exception of those who opted out. But plaintiffs presented no evidence that a sizeable number of the class members suffered an actual injury. Not all of the proposed class members applied for the promotions that the minority males asserted the department denied them. Employees who did not apply for promotions out of fear of discrimination were not properly included in the class because class membership must be based on objective criteria. The trial court clearly erred by finding that plaintiffs established numerosity.

3. To establish commonality, it is not sufficient to raise common questions; the common contention must be of such a nature that it is capable of classwide resolution. In this case, plaintiffs' claims included an inextricable mix of racial discrimination, ethnic discrimination, and gender discrimination claims against not only the department as a whole, but against individual supervisors and managers as well. Because there was no allegation of a single type or method of discrimination, or even an allegation that a single actor engaged in discrimination, the trial court clearly erred when it determined that the members of the proposed class established commonality.

4. Typicality is concerned with whether the claims of the named representatives have the same essential characteristics as the claims of the class at large. In this case, the trial court erred when it determined that plaintiffs had established typicality when there was no indication in the record that the named representatives had the same essential characteristics with regard to all the claims concerning all the different types and methods of discrimination by the various actors that the class definition and plaintiffs' allegations encompassed.

5. To establish adequacy, the proponents of class certification must show that counsel is qualified to pursue the class action and the members of the proposed class do not have antagonistic or conflicting interests. In this case, plaintiffs' generalized statement regarding their goal of ending discriminatory policies and practices failed to support either counsel's qualifications or a lack of conflicting interests among the representative parties and the class members. Accordingly, the trial court erred when it found that plaintiffs had supported the adequacy prerequisite to certification.

6. The superiority and commonality prerequisites are related because if individual questions of fact predominate over common questions, the case will be unmanageable as a class action. In this case, the trial court erred when it concluded that plaintiffs had established commonality because the members of the proposed

class did not present common questions of fact and law. Therefore, the trial court also erred when it determined that plaintiffs had established superiority because the case would be unmanageable as a class action given that individual questions of law and fact would predominate over common questions.

Reversed.

RONAYNE KRAUSE, P.J., concurring, would have reversed the class certification on the basis that plaintiffs failed to prove that each member of the proposed class individually had an objective basis for being defined as a member of the class. Judge RONAYNE KRAUSE declined to consider the other issues addressed by the majority because doing so was unnecessary.

*Daryle Salisbury* for plaintiffs.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Ann M. Sherman* and *Jeanmarie Miller*, Assistant Attorneys General, for defendant.

Before: RONAYNE KRAUSE, P.J., and FITZGERALD and WHITBECK, JJ.

PER CURIAM. Defendant, Department of Human Services (the Department or the DHS), appeals by leave granted the trial court's order denying its motion for summary disposition and certifying a class of plaintiffs who are males of African-American, Hispanic, Arab, and Asian racial and ethnic backgrounds who work for the Department (the minority males). Because the minority males have not established the requirements of class certification, we reverse.

I. FACTS

A. FACTUAL BACKGROUND

This Court summarized the background facts of this case in our previous opinion:

In this disparate treatment, employment discrimination suit, plaintiffs allege discrimination based on race, ethnicity, and gender in promotions to supervisory and management positions. The proposed class is comprised of all "minority" male employees of the DHS, including 616 African-American, Hispanic, Arab, and Asian males in various departments and offices throughout the state.[1] Plaintiffs maintain that, since 2003, fewer minority males have been promoted within the DHS to the positions of program manager, district manager, county director, and first line supervisor because of "department wide cultural deficiencies regarding minority males." According to plaintiffs, these deficiencies include: ineffective communication with minority males; a failure to neutrally and consistently apply promotional policies, criteria, and procedures; a real or perceived preference for the promotion of nonminority male or female candidates; a failure to recruit or appoint minority males to the DHS leadership academy [an employee training program] and supervisory positions; and a failure to hold accountable and train managers about promoting and working with minority males. Plaintiffs assert that some of the plaintiffs applied for and were denied promotions or training opportunities for which they were qualified and some of the plaintiffs were "too discouraged to apply" for promotions "due to [their] frustration with some of [the Department's] supervisory and management employees' discriminatory attitudes and practices involving racial and gender bias directed against minority males . . . ."

On the basis of the above grounds, plaintiffs allege that the DHS violated the equal protection and antidiscrimination clause of Const 1963, art 1, § 2, and the Civil Rights Act, MCL 37.2101 *et seq*. Plaintiffs asked the trial court to enter a permanent injunction to stop discrimination against minority male employees, to order the DHS to promote minority male employees to positions that were denied them, and to provide monetary compensation for promotional opportunities withheld from class members.

---

[1] Because class members have opted out of this lawsuit, there are now 586 members of the proposed class.

In support of their claims, plaintiffs largely rely on an internal memo authored by DHS Chief Deputy Director Laura Champagne, dated January 5, 2006. The memo provides, in part:

> The Office of Equal Opportunity and Diversity Programs (EODP) is currently undertaking a series of case studies. These case studies will look at identifying barriers that specific groups of employees may have in either applying for or being successful in being promoted into District Manager, County Director, Section Manager, and first line FIM or Services supervisor positions. The first part of the study will focus on the impact on minority males in the department for the above named positions.

On the basis of data collected from the DHS leadership academy, hiring data, and information gathered through a focus group, the memo cites its "major finding" as follows: "A disparity exists in minority males being promoted into upper management positions, more specifically program manager, district manager, county director and first line supervisory positions throughout the Department." The recommendations to correct the problem include: providing applicants with more information about screening criteria and job requirements; facilitating access to position postings; expanding interview training; requiring department-wide consistency in application submission requirements, screening criteria, and hiring policies; preventing "working out of class" candidates from competing for positions; requiring diversity on interviewing panels; and implementing targeted recruiting for the leadership academy.[2]

### B. PROCEDURAL HISTORY

The minority males filed their complaint on May 24, 2006, and moved to certify their class on January 8, 2007. The Department responded that the minority males had failed to satisfy requirements for class certi-

---

[2] *Duskin v Dep't of Human Servs*, 284 Mich App 400, 405-407; 775 NW2d 801 (2009).

fication under MCR 3.501(A)(1). The trial court granted the minority males' motion for class certification.

Applying a "rigorous analysis" standard, a panel of this Court reversed the trial court's certification decision on the basis that the minority males had not established the numerosity, commonality, typicality, adequacy, or superiority requirements of MCL 3.501(A)(1).[3] The minority males applied for leave to appeal this Court's decision in the Michigan Supreme Court.[4] After this Court's decision, the Michigan Supreme Court in *Henry v Dow Chem Co* specifically rejected the rigorous-analysis standard.[5] In lieu of granting leave to appeal, the Michigan Supreme Court vacated this Court's decision and remanded this case to the trial court for reconsideration in light of its decision in *Henry*.[6]

After remand, the Department moved for summary disposition. The minority males moved for class certification. The trial court denied the Department's motion for summary disposition and certified the minority males' class in a detailed opinion.

In support of its decision to certify, the trial court found that the minority males established numerosity because, while not all class members had applied for promotions, all class members had "an interest in making sure that they are not discriminated against if they do." The trial court found that the minority males had established commonality because the Department's culture of discrimination was the predominant question of fact and law. It found that the minority males established typicality because, while some members

---

[3] *Id.* at 409-426.

[4] *Duskin v Dep't of Human Servs*, 485 Mich 1064 (2010).

[5] *Henry v Dow Chem Co*, 484 Mich 483, 498-504; 772 NW2d 301 (2009).

[6] *Duskin*, 485 Mich at 1064.

may have applied for the same promotions, all class members "allegedly share the same fear of being discriminated against." The trial court also found that, while the named plaintiffs had different levels of training and education, they were all denied potential advancement when the Department denied their Leadership Academy selection. The trial court determined that the minority males had established adequacy on the basis that any potential conflict between the named plaintiffs and other class members were mitigated by their common interest in ending discrimination. The trial court found that the minority males established superiority because "the consolidations of numerous similar claims and the resulting consistent adjudications" was superior to individual determinations.

## II. CLASS CERTIFICATION

### A. STANDARD OF REVIEW

We review de novo the proper interpretation and application of a court rule.[7] We review for clear error the trial court's factual findings regarding class certification, and review for an abuse of discretion the trial court's discretionary decisions.[8] A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake.[9]

### B. LEGAL STANDARDS

Members of a class may only sue or be sued as representatives of all class members if they meet the

---

[7] *Henry*, 484 Mich at 495.

[8] *Id.* at 495-496.

[9] *Peters v Gunnell, Inc*, 253 Mich App 211, 221; 655 NW2d 582 (2002).

requirements of MCR 3.501(A)(1).[10] MCR 3.501(A)(1) allows a suit to proceed as a class action if all the following circumstances exist:

(a) the class is so numerous that joinder of all members is impracticable;

(b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d) the representative parties will fairly and adequately assert and protect the interests of the class; and

(e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.[11]

"These prerequisites are often referred to as numerosity, commonality, typicality, adequacy, and superiority."[12]

Michigan requires the party seeking class certification to establish each prerequisite for class certification.[13] The party's pleadings will only be sufficient to support certification if the facts are "uncontested or admitted by the opposing party."[14] The court should not question the actual merits of the case.[15] However, the proponent of certification must make "an adequate statement of basic facts to indicate that each prerequisite is fulfilled."[16]

---

[10] *Henry*, 484 Mich at 496.

[11] MCR 3.501(A)(1). See also *Henry*, 484 Mich at 496-497.

[12] *Henry*, 484 Mich at 488.

[13] *Id.* at 500.

[14] *Id.* at 502-503.

[15] *Id.* at 504.

[16] *Id.* at 505.

C. APPLYING THE STANDARDS

### 1. NUMEROSITY

The Department contends that the trial court erred by finding that the plaintiffs had met the requirements of numerosity. We agree.

A plaintiff need not show a particular number of members to establish numerosity.[17] But the plaintiff "must adequately define the class so potential members can be identified and must present some evidence of the number of class members or otherwise establish by reasonable estimate the number of class members."[18] The proponent must establish that a sizeable number of class members have suffered an actual injury.[19]

In this case, the trial court found that the minority males established numerosity because their class included 586 individuals. The trial court recognized that "class members may or may not have applied for promotions," but determined that "all members of the class have an interest in making sure that they are not discriminated against if they do."

The minority males' proposed class consists of all minority males employed by the Department, except those who have opted out. However, the minority males presented no evidence—and the trial court did not find—that a sizeable number of these class members suffered an actual injury. Indeed, the trial court recognized that not all class members even applied for the promotions that the minority males assert the Department denied them. Employees who did not apply for promotions out of fear of discrimination are not properly included in a class because class membership must

---

[17] *Zine v Chrysler Corp*, 236 Mich App 261, 287; 600 NW2d 384 (1999).

[18] *Id*. at 288.

[19] *Id*. at 288-289

be based on objective criteria.[20] Therefore, while the minority males established an estimate of the number of class members, they did not provide an adequate statement of basic facts to support that a sizeable number of those class members suffered an actual injury.

We are definitely and firmly convinced that the trial court made a mistake because the minority males did not provide basic facts regarding whether a sizeable number of class members suffered an actual injury. We conclude that the trial court clearly erred by finding that the minority males established numerosity.

### 2. COMMONALITY

The Department contends that the trial court erred when it found that the minority males established commonality. We agree.

To establish commonality, the proponent of certification must establish that issues of fact and law common to the class "predominate over those issues subject only to individualized proof."[21] However, it is not sufficient to merely raise common questions.[22] The "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[23]

In other words, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered

---

[20] *Mich Ass'n of Chiropractors v Blue Care Network of Mich, Inc*, 300 Mich App 577, 590; 834 NW2d 138 (2013).

[21] *Zine*, 236 Mich App at 289 (quotation marks and citation omitted).

[22] *Mich Ass'n of Chiropractors*, 300 Mich App at 592; *Wal-Mart Stores, Inc v Dukes*, 564 US ___; 131 S Ct 2541, 2551; 190 L Ed 2d 374 (2011).

[23] *Wal-Mart*, 564 US at___; 131 S Ct at 2551.

the same injury[.]' "[24] For the purpose of the common-
ality inquiry, intentional discrimination, disparate-
impact hiring or promotion criteria, and deliberate
discrimination by individual supervisors are different
things.[25] In this case, the trial court found that the
minority males established common questions of law
and fact regarding the Department's "culture of dis-
crimination," finding that "[m]embers of the proposed
class experienced what they perceived to be a culture of
discrimination both from their own positions, as well as
in capacities outside their class—on a statewide level."

The trial court's finding did not support its conclu-
sion regarding commonality. The minority males as-
serted that (1) some plaintiffs applied for but were
denied promotions, and (2) others were too disheart-
ened to apply for promotions. The minority males
asserted that supervisory and management employees
had discriminatory attitudes and practices demonstrating
racial and gender bias. The minority males also asserted
that there were "department[-]wide cultural deficiencies
regarding minority males." In support of these assertions,
the minority males offered (1) a Departmental memo,
which stated in part that departmental units had engaged
in inconsistent policy application, and (2) statistical data
showing an underrepresentation of minority males in the
Leadership Academy.

The minority males' assertions, as well as their prof-
fered facts, show that commonality does not exist in their
expansive class definition. The minority males' claims
include an inextricable mix of racial discrimination, ethnic
discrimination, and gender discrimination claims against
not only the Department as a whole, but against indi-
vidual supervisors and managers as well. The supporting

---

[24] *Id.* at ___; 131 S Ct at 2551, quoting *Gen Tel Co of Southwest v
Falcon*, 457 US 147, 157; 102 S Ct 2364; 72 L Ed 2d 740 (1982).

[25] See *Wal-Mart*, 564 US at ___; 131 S Ct at 2551.

materials offered by the minority males do not specifically concern racial or gender discrimination. Nor do these materials show a method of discrimination by a single actor: the statistical data regarding the Leadership Academy may show Department-wide disparate-impact regarding promotion criteria, while the memo indicates that individual supervisors and managers deliberately applied discriminatory policies out of bias.

The minority males' combined suit would require proofs regarding different types of discrimination (racial or ethnic, and gender) and different methods of discrimination (disparate impact, and deliberate discrimination) against different actors (the Department as a whole, and an undetermined number of supervisors in individual departmental units). Because there is no allegation of a single type or method of discrimination, or even an allegation that a single actor engaged in discrimination, we are definitely and firmly convinced that the trial court made a mistake when it found that the minority males raised common questions of law or fact. We conclude that the trial court clearly erred when it found that the minority males established commonality.

### 3. TYPICALITY

The Department contends that the trial court erred when it found that the minority males established typicality. We agree.

Typicality is concerned with whether the claims of the named representatives "have the same essential characteristics of the claims of the class at large."[26] As

---

[26] *Neal v James*, 252 Mich App 12, 21; 651 NW2d 181 (2002) (quotation marks and citation omitted), overruled in part on other grounds by *Henry*, 484 Mich 505 n 39.

does commonality, typicality requires that the class representatives share a common core of allegations with the class as a whole.[27]

In this case, the trial court found that the named plaintiffs "have different levels of training and education" but "were all denied Leadership Academy selection" and thus were typical of the class as a whole. However, as stated earlier, the statistical disparity regarding minority males in the Leadership Academy was just one of the theories on which the minority males based their claims. There is no indication in the record before us that the named representatives have the same essential characteristics regarding *all* the claims concerning *all* the different types and methods of discrimination by the various actors that the class definition and the minority males' allegations encompass. We conclude that the trial court clearly erred when it found that the minority males established typicality.

### 4. ADEQUACY

The Department contends that the trial court erred when it determined that the minority males established adequacy. We agree.

Proponents of class certification establish adequacy by showing that "class representatives can fairly and adequately represent the interests of the class as a whole."[28] To show adequacy, the proponents must show that (1) counsel is qualified to pursue the proposed class action, and (2) the members of the class do not have antagonistic or conflicting interests.[29]

---

[27] *Neal*, 252 Mich App at 21.

[28] *Id.* at 22.

[29] *Id.*

In this case, the trial court failed to address whether the minority males' counsel was qualified to pursue the class action. The trial court did find that the named representatives adequately represented the class because "all members of the class allegedly share the same fear of being discriminated against."

We caution trial courts against relying on a proponent's bare allegations. The trial court "may not simply accept as true a party's bare statement that a prerequisite is met unless the court independently determines that the plaintiff has at least alleged a statement of basic facts and law that are adequate to support the prerequisite."[30] In this case, the minority males stated that they had remained in the case for at least seven years and have the united goal of ending discriminatory policies and practices. The minority males' generalized statement regarding their goals fails to support either (1) counsel's qualifications or (2) a lack of conflicting interests among the representative parties and class members.

We conclude that the trial court clearly erred when it found that the minority males supported the element of adequacy.

### 5. SUPERIORITY

The Department contends that the trial court erred when it found that the minority males established superiority. We agree.

The superiority and commonality requirements are related because "if individual questions of fact predominate over common questions, the case will be unmanageable as a class action."[31] In this case, the trial court

---

[30] *Henry*, 484 Mich at 505.

[31] *Zine*, 236 Mich App at 289 n 14. See *A&M Supply Co v Microsoft Corp*, 252 Mich App 580, 601-603; 654 NW2d 572 (2002).

erred when it determined that the minority males established commonality; as we outlined earlier in this opinion, the minority males do not present common questions of fact and law. Therefore, the trial court erred when it determined that the minority males established superiority. Individual questions of law and fact will predominate over any common questions, making this case unmanageable as a class action.

### III. CONCLUSION

We conclude that the trial court clearly erred when it found that the minority males established numerosity, commonality, typicality, adequacy, and superiority under MCR 3.501(A)(1). Therefore, we conclude that the trial court erred by certifying this matter as a class action.

We reverse.

FITZGERALD and WHITBECK, JJ., concurred.

RONAYNE KRAUSE, P.J. (*concurring*) I concur in reversing the class certification because the proposed class has not established objective criteria for certification. I believe that a poisonous working environment can be harmful, and I am not persuaded that it would be impossible to certify a class similar to the proposed class here. However, plaintiffs simply fail to undertake the simple and elementary prerequisite of proving that each member of the proposed class individually has an objective basis for being defined as a member therein.

This Court has previously addressed a proposed certification of a class consisting of "chiropractors who have not sought membership with BCN [Blue Care Network] because doing so would be futile given BCN's open practice of not allowing chiropractors to become

members of BCN." *Mich Ass'n of Chiropractors v Blue Care Network of Mich, Inc*, 300 Mich App 577, 583; 834 NW2d 138 (2013). I cannot distinguish between that proposed class and the instant proposed class of male minority employees who have not sought career advancement with defendant because doing so would allegedly be futile given defendant's alleged practice of not promoting male minority employees.

This Court held that class uncertifiable "because membership cannot be established without knowing the subjective reason why each chiropractor gave up on the quest to affiliate with BCN." *Id.* at 590. The instant proposed class is therefore likewise uncertifiable. The trial court's class certification must, as the majority holds, therefore be reversed. I concur in the result reached by the majority on that basis, but I decline to consider any of the other issues discussed because I find doing so unnecessary.