*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RACHEL BROWN, on behalf of herself and all others similarly situated,

        Plaintiff-Appellee,

v

VHS OF MICHIGAN, INC., doing business as DETROIT MEDICAL CENTER, VHS HARPER-HUTZEL HOSPITAL, INC., doing business as HARPER-HUTZEL HOSPITAL, WAYNE STATE UNIVERSITY, KNOLLWOOD MEMORIAL PARK CEMETERY ASSOCIATION, and KNOLLWOOD MEMORIAL PARK,

        Defendants,

and

VERMEULEN FUNERAL HOMES, INC., doing business as PERRY FUNERAL HOME (WAYNE COUNTY),

        Defendant-Appellant.

UNPUBLISHED
March 25, 2021

No. 349240
Wayne Circuit Court
LC No. 18-007528-CZ

RACHEL BROWN, on behalf of herself and all others similarly situated,

        Plaintiff-Appellee,

v

VHS OF MICHIGAN, INC. doing business as DETROIT MEDICAL CENTER, VHS HARPER-HUTZEL HOSPITAL, INC., doing business as HARPER-HUTZEL HOSPITAL,

No. 349251
Wayne Circuit Court
LC No. 18-007528-CZ

-1-

Defendants-Appellants,

and

VERMEULEN FUNERAL HOMES, INC., doing
business as PERRY FUNERAL HOME (WAYNE
COUNTY), WAYNE STATE UNIVERSITY,
KNOLLWOOD MEMORIAL PARK CEMETERY
ASSOCIATION, and KNOLLWOOD MEMORIAL
PARK,

Defendants.

Before:  O'BRIEN, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

In these consolidated matters, defendant Vermeulen Funeral Homes, Inc., doing business as Perry Funeral Home (Wayne County) ("Perry Funeral Home"), appeals by leave granted in Docket No. 349240, and defendants Detroit Medical Center ("DMC") and VHS Harper-Hutzel Hospital, Inc., doing business as Harper-Hutzel Hospital ("Harper-Hutzel Hospital"), appeal by leave granted in Docket No. 349251.  These defendants appeal the trial court's May 16, 2019 order granting the motion of plaintiff, Rachel Brown, on behalf of herself and others similarly situated, for class certification, appointment of a class representative, and appointment of class counsel.  We reverse and remand for further proceedings.

## I.  BACKGROUND

Plaintiff's daughter, Alayah Laniece Davis, was born on December 8, 2014.  The child died within 30 minutes of her birth after experiencing "profound respiratory distress."  Following Alayah's death, plaintiff and her husband were approached by a nurse or social worker who asked whether they wanted to donate Alayah's body to the Wayne State University (WSU) Medical School for medical education and research, or have her body transferred to a funeral home for burial.  Plaintiff alleged that after discussing the matter with the hospital social worker, they decided to donate Alayah's body to the medical school in "the hope that it would assist medical science and research."  According to plaintiff's complaint, rather than transferring Alayah's body to the medical school, the DMC and Harper-Hutzel Hospital informed Perry Funeral Home that plaintiff had abandoned Alayah's body and requested that Perry Funeral Home take final possession of her body for final disposition.  Plaintiff alleged that defendants engaged in a similar practice with the parents of 36 other deceased infants or fetuses.

Plaintiff's first amended complaint alleged, among other claims, intentional infliction of emotional distress (IIED), fraud, and negligence against the DMC, Harper-Hutzel Hospital, and Perry Funeral Home.  As relevant to these appeals, plaintiff filed a motion seeking class certification of these claims.  Following a hearing, the trial court held that plaintiff had satisfied

-2-

the requirements of MCR 3.501(A)(1) and certified the case as a class action. The court's certification order defines the class as follows:

Main Class:

Parents (as identified in medical records or official vital records of stillborn fetuses or of liveborn babies, delivered at Harper-Hutzel Hospital, Detroit, MI, between June 1, 2003 and July 5, 2018, and who died prior to discharge) whose right to decision regarding their final disposition was interfered with by: (1) Harper-Hutzel which transferred the remains to Perry Funeral Home for final disposition, without parental authorization; and (2) Perry which failed to make final disposition within at least ninety (90) days of its receipt of the remains. As a result of the acts and/or omissions of each Defendant, parents suffered damages.

Sub Class I:

Parents identified in the Main Class, who had also arranged with Harper-Hutzel Hospital to make an anatomical gift of the remains of the stillborn or deceased baby to Wayne State University School of Medicine; and whose remains were not given to the medical school but instead, were transferred by Harper-Hutzel to Perry Funeral Home. As a result, parents suffered damages.

Sub Class II:

Parents, of liveborn babies, as identified in the Main Class, who died prior to discharge from Harper-Hutzel Hospital, whose remains were transferred to Perry Funeral Home, and whose death certificates, prepared and filed by Perry, indicated burial at Knollwood Cemetery, when babies' remains were not so buried. As a result, parents suffered damages.

Defendant Perry Funeral Homes appeals this order by leave granted in Docket No. 349240, and defendants DMC and Harper-Hutzel Hospital appeal the order by leave granted in Docket No. 349251.

## II. CERTIFICATION OF CLASS ACTION

Defendants argue that the trial court erred by certifying plaintiff's case as a class action. Because we agree that plaintiff failed to satisfy the commonality requirement in MCR 3.501(A)(1)(b), we conclude that the trial court erred by certifying the case as a class action.

## A. STANDARD OF REVIEW

In *Henry v Dow Chem Co*, 484 Mich 483, 503-504; 772 NW2d 301 (2009), our Supreme Court recognized that state courts, similar to their federal counterparts, "have broad discretion to determine whether a class will be certified." The court further recognized, however, that a court must make findings of fact in deciding whether to grant class certification. Therefore, the Court explained:

Given that the analysis a trial court must undertake in order to determine whether to certify a proposed class may involve making both findings of fact *and* discretionary determinations, . . . it [is] proper to review the trial court's factual findings for clear error and the decisions within the trial court's discretion for abuse of discretion. This differentiated standard of review for class certification decisions is consistent with the mixed nature of a proper class certification analysis. [*Id*. at 495-496.]

A trial court's findings of fact will be deemed clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake. *Duskin v Dep't of Human Servs*, 304 Mich App 645, 651; 848 NW2d 455 (2014). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *In re Ingham Co Treasurer for Foreclosure*, 331 Mich App 74, 77; 951 NW2d 85 (2020). The party seeking class certification bears the onus of satisfying the court that it has met the requirements of MCR 3.501. *Mich Ass'n of Chiropractors v Blue Cross Blue Shield of Mich*, 300 Mich App 551, 559; 834 NW2d 148 (2013).

## B. ANALYSIS

Preliminarily, DMC and Harper-Hutzel Hospital argue that the trial court's order certifying the class impermissibly requires them to disclose to plaintiff's counsel information subject to the physician-patient privilege to enable plaintiff's counsel to determine the members of the class. We disagree because the certification order does not require any disclosure of information by DMC and Harper-Hutzel Hospital, and the issue of privileged information was addressed and resolved in subsequent proceedings that are beyond the scope of this appeal.

After the trial court granted plaintiff's motion to certify the action as a class action, but before an order certifying the case as a class action was entered, additional proceedings were held relative to plaintiff's requests for records related to an investigation of Perry Funeral Home conducted by the Michigan Department of Licensing and Regulatory Affairs (LARA). Plaintiff served LARA with a subpoena for records related to LARA's investigation, and LARA filed a motion to quash the subpoena, arguing that the requested records were protected by the physician-patient privilege. DMC, Harper-Hutzel Hospital, and Perry Funeral Home filed responses concurring with LARA's motion to quash. Following a hearing on May 3, 2019, the trial court stated that it would *not* require DMC and Harper-Hutzel Hospital to disclose privileged information and it would enter a protective order. On July 11, 2019, which was approximately two months after the trial court had entered the order certifying the case as a class action, the court entered an order stating that it had reviewed *in camera* voluminous documentation submitted by LARA, and it ordered LARA to produce this information to plaintiff. The order further provided that if plaintiff provided a "LARA appropriate release," LARA could provide plaintiff with responsive records in redacted form to protect privileged information.

Although DMC and Harper-Hutzel Hospital's application for leave to appeal in Docket No. 349251 raised the issue whether the May 16, 2019 class certification order improperly required DMC and Harper-Hutzel Hospital to release privileged information to plaintiff's counsel, that order did not contain any provision requiring DMC and Harper-Hutzel Hospital to disclose any information, privileged or otherwise. Indeed, the trial court did not even rule on the issue of what

information could be provided to plaintiffs while protecting privileged information until it entered its order on July 11, 2019, which DMC and Harper-Hutzel Hospital have not appealed and is not part of this appeal. When an application for leave to appeal is granted, the appeal is limited to the issues raised in the application and supporting brief, unless ordered otherwise. MCR 7.205(E)(4). In this case, the order granting DMC and Harper-Hutzel Hospital's application specified that the appeal was "limited to the issues raised in the application and supporting brief." *Brown v VHS of Mich, Inc*, unpublished order of the Court of Appeals, entered October 9, 2019 (Docket No. 349251). DMC and Harper-Hutzel Hospital could not have raised any issue related to the July 11, 2019 order because they filed their application and supporting brief before that order was even entered. Accordingly, the propriety of that order is not properly before this Court.

We now turn our attention to the issue whether the trial court properly certified this case as a class action. In *Henry*, 484 Mich at 488, our Supreme Court stated that the party requesting that a class action be certified "is required to provide the certifying court with information sufficient to establish that each prerequisite for class certification in MCR 3.501(A)(1) is in fact satisfied." In ruling on a request for class certification, a court is not permitted to render determinations on the merits of the foundational claims. *Id*. The Court observed that because the requirements for class certification in Michigan are "nearly identical" to the requirements of its federal counterpart, FR Civ P 23, "similar purposes, goals, and cautions" are equally applicable to both. *Id.* at 499. In discussing whether to adopt the federal "rigorous analysis" standard or allow Michigan courts to simply accept a plaintiff's bare assertions that the requirements of the court rule have been met, the Court held that "strict adherence" to the requirements of the court rule is necessary and, in accordance with precedent from the United States Supreme Court, agreed that "a court must only certify a class in circumstances where the court has actually been *shown* that the prerequisites for class certification are satisfied." *Id*. at 500-501. The Court reasoned, in pertinent part:

> We agree with Dow that a certifying court may not simply "rubber stamp" a party's allegations that the class certification prerequisites are met. However, the federal "rigorous analysis" requirement does not necessarily bind state courts. We believe that the plain language of MCR 3.501(A) provides sufficient guidance for class certification decisions in Michigan. Given that MCR 3.501(A)(1) expressly conditions a class action on satisfaction of the prerequisites, a party seeking class certification is required to provide the certifying court with information sufficient to establish that each prerequisite for class certification in MCR 3.501(A)(1) is in fact satisfied. A court may base its decision on the pleadings alone *only if* the pleadings set forth sufficient information to satisfy the court that each prerequisite is in fact met. The averments in the pleadings of a party seeking class certification are only sufficient to certify a class if they satisfy the burden on the party seeking certification to prove that the prerequisites are met, such as in cases where the facts necessary to support this finding are uncontested or admitted by the opposing party. [*Id*. at 502-503.]

Therefore, if the pleadings are not sufficient to guide the court's decision regarding the propriety of class certification, it is incumbent on the court to look beyond the pleadings, without crossing into the forbidden territory of weighing the merits of the plaintiff's claims at this early stage in the proceedings. *Id*. at 503. The Court stated that, in some situations, a review of the pleadings *will* suffice to establish that the requirements of MCR 3.501 have been satisfied, but that "mere

repetition of the language of MCR 3.501(A)(1) is not sufficient to justify class certification, and there must be an adequate statement of basic facts to indicate that each prerequisite is fulfilled." *Id*. at 504-505. The Court elaborated:

> [A]t least some greater analysis is required than simply accepting a party's bare assertion that the prerequisites have been met. Thus, a circuit court may not simply accept as true a party's bare statement that a prerequisite is met unless the court independently determines that the plaintiff has at least alleged a statement of basic facts and law that are adequate to support that prerequisite. [*Id*. at 505.]

> MCR 3.501(A) provides, in pertinent part:

> **Nature of Class Action.**

> (1) One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if:

> (a) the class is so numerous that joinder of all members is impracticable;

> (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

> (d) the representative parties will fairly and adequately assert and protect the interests of the class; and

> (e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.[1]

A plaintiff seeking certification of a class must demonstrate that all five requirements in MCR 3.501(A) are satisfied. *Hill v City of Warren*, 276 Mich App 299, 310; 740 NW2d 706 (2007).

## 1. NUMEROSITY

In *Zine v Chrysler Corp*, 236 Mich App 261, 288; 600 NW2d 384 (1999), this Court recognized that "[t]here is no particular minimum number of members necessary to meet the numerosity requirement, and the exact number of members need not be known as long as general knowledge and common sense indicate that the class is large." The proposed class must be defined in such a manner that potential members can be identified and present some type of evidence establishing the number of class members, or another method by which the number of class members can be demonstrated "by reasonable estimate." *Mich Ass'n of Chiropractors*, 300 Mich

---

[1] While MCR 3.501 was amended, effective May 1, 2020, the amendments are not relevant to the issues on appeal.

App at 567-568; *Zine*, 236 Mich App at 288. Class membership is based on objective criteria, and to pursue redress as a member of a class action, a class member must have suffered an actual injury. *Duskin*, 304 Mich App at 653-654; *Zine*, 236 Mich App at 288.

Perry Funeral Home argues that plaintiff's reliance on the laboratory logs maintained by the WSU School of Mortuary Science to claim that more than 200 remains of babies were mishandled by DMC, Harper-Hutzel Hospital, and Perry Funeral Home "is nothing short of pure conjecture." DMC and Harper-Hutzel Hospital argue that plaintiff has not established how many parents are in the class, or that the alleged members satisfy the requirements of the defined class. Further, Perry Funeral Home argues that the laboratory logs do not support plaintiff's contention that the remains of the babies were removed without the knowledge and consent of the parents. According to all of the defendants, the record does not contain evidence from which a reasonable inference can be drawn that a sizable number of the members of the class suffered an actual injury.

Plaintiff counters that the members of the class are clearly defined and readily identifiable, or can be ascertained from reference to public records. Plaintiff maintains that a minimum of 63 potential class members were established by the April 30, 2015 correspondence of Dr. Wilkerson-Uddyback to Perry Funeral Home, as well as by representations by counsel for Perry Funeral Home that were noted on the record at a June 21, 2019 motion hearing. Plaintiff also claims that laboratory logs from the WSU School of Mortuary Science confirm that 200 fetuses were transferred to Perry Funeral Home from hospitals in the Detroit area and were not properly disposed of in accordance with the parents' authorization.

We conclude that plaintiff presented evidence to satisfy the numerosity requirement with respect to the main class. Specifically, plaintiff demonstrated through Dr. Wilkerson-Uddyback's April 30, 2015 correspondence that the remains of at least 34 liveborn and stillborn babies were left "unclaimed" at Harper-Hutzel Hospital, and when the parents of the babies were contacted by telephone and certified mail, they did not respond and authorize the final disposition of the remains. This evidence supported that there were at least 34 potential class members whose babies were either liveborn or stillborn at Harper-Hutzel Hospital, that the remains were transferred to Perry Funeral Home to be disposed of without the knowledge and consent of the parents, and that the remains were not disposed of in accordance with Michigan law. Moreover, during his deposition, Gary Deak, the director of Perry Funeral Homes, was questioned concerning the ultimate disposition of the remains and stated that Perry Funeral Home had not undertaken a proper disposition of the remains. Accordingly, Dr. Wilkerson-Uddyback's correspondence reflects that the DMC and Harper-Hutzel Hospital transferred the remains of the babies to Perry Funeral Home to handle the disposition of the remains without the knowledge and consent of their parents, and Deak's testimony confirmed that this disposition did not occur. Therefore, plaintiff presented adequate information to support the trial court's conclusion that the numerosity requirement was satisfied.

We also note, however, that after reviewing the laboratory logs from the WSU School of Mortuary Science, they do not provide an indication whether the parents of the fetuses are members of the class. Specifically, unlike the April 30, 2015 correspondence of Dr. Wilkerson-Uddyback, there is no indication whether the remains consist of liveborn or stillborn babies or if they were fetuses, whether the remains were transferred to Perry Funeral Home to be disposed of without the

knowledge and consent of the parents, or whether the remains were not buried or cremated in accordance with Michigan law.

## 2. COMMONALITY AND TYPICALITY

### a. COMMONALITY

In *Duskin*, 304 Mich App at 654, this Court observed:

> To establish commonality, the proponent of certification must establish that issues of fact and law common to the class predominate over those issues subject only to individualized proof. However, it is not sufficient to merely raise common questions. The common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. [Citations and quotation marks omitted.]

Thus, the plaintiff must demonstrate the existence of a common question, the resolution of which will lead to the advancement of the litigation. *Tinman v Blue Cross & Blue Shield of Mich*, 264 Mich App 546, 563; 692 NW2d 58 (2004). While not all issues are required to be common, it is necessary that "the common issue or issues . . . predominate over those that require individualized proof." *Hill*, 276 Mich App at 311.

To meet the requirement of commonality, the plaintiff bears the onus of establishing that the class members incurred the same injury. *Duskin*, 304 Mich App at 654-655. While MCR 3.501(A)(1)(b) does not require that all questions necessary to ultimately resolve the litigation be common to each of the class's members, *A & M Supply Co v Microsoft Corp*, 252 Mich App 580, 599; 654 NW2d 572 (2002), the pertinent inquiry is whether the plaintiff can demonstrate, "with common proof that the members of the class have suffered a common injury." *Id*. at 599-600. The plaintiff must provide the trial court with a basis on which it can determine "that all members of the class had a common injury that could be demonstrated with generalized proof, rather than evidence unique to each class member." *Id*. at 600. To do so, there must be overarching common issues that aid in the determination of liability. *Id*.

With respect to the requirement of typicality, MCR 3.501(A)(1)(c), this Court has explained:

> Typicality is concerned with whether the claims of the named representatives have the same essential characteristics of the claims of the class at large. As does commonality, typicality requires that the class representatives share a common core of allegations with the class as a whole. [*Duskin*, 304 Mich App at 656-657 (quotation marks omitted).]

This Court has stated that commonality and typicality are "separate elements" that the court must consider with respect to the certification of a class, but both assist the court in determining whether the maintenance of a class action is the most economic course of action under the circumstances and " 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.' " *Mich Ass'n of*

-8-

*Chiropractors*, 300 Mich App at 573, quoting *Gen Tel Co of the Southwest v Falcon*, 457 US 147, 157 n 13; 102 S Ct 2364; 72 L Ed 2d 740 (1982).

Turning first to the requirement of commonality, plaintiff claimed that common issues of law and fact existed with other potential class members because, as with plaintiff, DMC and Harper-Hutzel Hospital did not follow their directions regarding donating the remains of their babies and fetuses for anatomical gifts to WSU's Medical School, and that with the authorization of DMC and Harper-Hutzel Hospital, Perry Funeral Home took possession of and stored the remains of the babies and the fetuses in violation of Michigan law. In her motion for class certification, plaintiff further alleged that the main class members were comprised of parents of liveborn and stillborn babies who were delivered at Harper-Hutzel Hospital and other Detroit area hospitals, the remains of which were transferred to Perry Funeral Home and not buried or cremated in accordance with Michigan law. The initial subclass further made a distinction for potential class members who had agreed to make an anatomical donation of the remains of their babies or fetuses, and the second subclass involved potential class members for whose babies and fetuses Perry Funeral Home prepared and filed false delayed certificates of death indicating that they were interred at Knollwood Cemetery. In our view, the trial court correctly recognized that as a general matter, plaintiff's claims, and the claims of other potential class members, arose from the deaths of human babies and fetuses. However, while the court further observed that a common question remained with respect to the disposition of the remains, the present case is not one in which a proper determination of the truth or falsity of the common contention—that being whether the remains were properly handled in accordance with the wishes of the parents, and then properly disposed of—is capable of classwide resolution. *Duskin*, 304 Mich App at 654. Instead, resolution of this issue with regard to each class member would entail an individualized inquiry regarding the circumstances under which DMC and Harper-Hutzel Hospital took possession of the remains, what directions the parents gave regarding the handling and transport of the remains, and consideration of the specific circumstances under which the remains came into the possession of Perry Funeral Home. Accordingly, we are left with a definite and firm conviction that the trial court erred by finding that plaintiff established commonality, inasmuch as the issues that required individualized proof predominated over the issues of fact and law common to the class.

b. THE NATURE OF PLAINTIFF'S CLAIMS AND ALLEGED DAMAGES

DMC and Harper-Hutzel Hospital further argue that the trial court erred by certifying a class action because the nature of plaintiff's claims for IIED and her claimed emotional distress damages are antithetical to a class action. Perry Funeral Home advances this same argument with respect to plaintiff's claims for IIED, fraud, and negligence, as well as regarding her claimed emotional damages.

In *Swain v Morse*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346850); slip op at 12, lv pending, this Court held that to prevail on a claim for IIED, a plaintiff must establish the following elements:

(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. [Quotation marks and citations omitted.]

While the trial court is initially tasked with determining whether the defendant's conduct was so outrageous and extreme to allow for recovery, the jury ultimately decides this issue. *Id*. at ___; slip op at 12. "Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 608; 374 NW2d 905 (1985), quoting Restatement Torts 2d, § 46, comment j, p 47.

> To successfully prevail on a claim for fraud, a plaintiff must demonstrate the following:
>
> (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012) (citations omitted).

To prevail on a claim for negligence, the plaintiff must satisfy the following elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018). Our Supreme Court has recognized that damages in tort may include "mental and emotional distress damages," which can include "mental suffering, anxiety, suspense, and fright." *Hannay v Dep't of Transp*, 497 Mich 45, 65, 66; 860 NW2d 67 (2014). As explained earlier in the context of addressing the requirement of commonality, resolution of the claim of each potential class member would entail an individualized inquiry regarding the circumstances under which DMC and Harper-Hutzel Hospital took possession of the remains of their children, what directions were given by the parents with respect to the handling and transport of the remains, and consideration of the specific circumstances under which the remains came into the possession of Perry Funeral Home. Therefore, to successfully establish claims of negligence and fraud, an evaluation of the circumstances under which the remains at issue were entrusted to Harper-Hutzel Hospital would be pivotal in determining whether a class member could make out a prima facie case. For example, with respect to fraud, a class member would be required to establish that in his or her particular circumstances, a false and material representation was made. Conversely, with respect to a claim alleging negligence, it would be necessary to understand the circumstances under which the remains were provided to Harper-Hutzel Hospital or another medical facility to determine if defendants breached a standard of care. Additionally, a claim of IIED, or a request for damages for emotional distress, would require an examination of each class member's specific circumstances to determine what mental suffering or mental reactions the member endured. Thus, to the extent that plaintiff and the potential class members would pursue claims for IIED, negligence, and fraud against DMC, Harper-Hutzel Hospital, and Perry Funeral Home, defendants correctly argue that these claims would involve individualized proofs that would predominate over any issues of fact and law common to the class. Therefore, plaintiff did not satisfy the requirement of commonality.

## c. TYPICALITY

With respect to typicality, we are not persuaded that the trial court clearly erred by determining that this requirement was satisfied. Although we do not agree with the trial court's reasoning that this requirement was met because stillborn babies and fetuses "fall into the category of being dead," the court's ultimate conclusion was nonetheless correct. First, a class action is the most economic method of adjudicating these claims, particularly because the claims of plaintiff and the potential class members are so closely intertwined that plaintiff would adequately protect the interests of the class members in their absence. *Mich Ass'n of Chiropractors*, 300 Mich App at 573. We reach this conclusion because the allegations that plaintiff advances on behalf of the potential class members mirror her allegations against defendants with respect to her deceased baby, in that she generally alleges that similar to how Alayah's remains were mishandled in contravention of her wishes, the DMC and Harper-Hutzel Hospital did not adhere to the instructions of other parents with regard to the handling of the remains of their liveborn or stillborn babies or fetuses, and that Perry Funeral Home took possession of and handled the remains in a manner that violated Michigan law. Accordingly, while the trial court relied on different reasoning, its ultimate conclusion that plaintiff satisfied the requirement of typicality was correct.[2]

### d. ADEQUACY

In *Duskin*, 304 Mich App at 657, this Court explained how a plaintiff meets the requirement of adequacy set forth in MCR 3.501(A)(1)(d).

> Proponents of class certification establish adequacy by showing that class representatives can fairly and adequately represent the interests of the class as a whole. To show adequacy, the proponents must show that (1) counsel is qualified to pursue the proposed class action, and (2) the members of the class do not have antagonistic or conflicting interests. [Quotations omitted, emphasis added.]

The Court also echoed our Supreme Court's pronouncement cautioning trial courts from simply accepting the plaintiff's "bare allegations" in the pleadings, instructing that a court " 'may not simply accept as true a party's bare statement that a prerequisite is met unless the court independently determines that the plaintiff has at least alleged a statement of basic facts and law that are adequate to support the prerequisite.' " *Duskin*, 304 Mich App at 658.

Perry Funeral Home suggests that plaintiff's attorneys were not qualified to handle the class action because they had not participated in a class action proceeding before. Perry Funeral Home further claims that plaintiff is not qualified to serve as the class representative, even given her prior experience in making another anatomical donation of a stillborn child that was not mishandled. Perry Funeral Home also asserts that plaintiff has not ruled out the "possibility of conflicting or antagonistic interests" that it claims are evident from the differences between the subclasses. DMC and Harper-Hutzel Hospital argue that because (1) the main class and the subclasses are "highly individualized," and (2) the interests of the members of the subclasses may conflict with those of the members in the main class, plaintiff is not qualified to adequately

---

[2] This Court may affirm the trial court if it reached the right result, even if this Court disagrees with the trial court's reasoning. *Bronson Health Care Group, Inc, v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 342 n 3; 948 NW2d 115 (2019).

-11-

represent the interests of the entire class. In response, plaintiff argues that she is well able to competently represent the interests of the class, particularly because of her prior experience in losing a baby and donating the remains of that child for medical research. Plaintiff further contends that her attorneys are well-suited to vigorously represent the interests of all class members, and that no conflicts of interest exist, or could potentially arise, that would render her representation of the class inadequate.

In *Neal v James*, 252 Mich App 12, 23; 651 NW2d 181 (2002), overruled on other grounds by *Henry*, 484 Mich at 505 n 39, this Court concluded that the trial court erred by certifying a class action and, as relevant to this issue, had erred in concluding that the plaintiff satisfied the requirement of adequacy because conflicts could arise among the class members with respect to identical positions for which they were competing. Moreover, given that the claims alleged were of a "highly individualized nature," this Court determined that it was unlikely that the plaintiffs could adequately represent the interests of all class members. *Id*. As we have previously concluded with respect to the commonality requirement, plaintiff's and the potential class members' claims against DMC, Harper-Hutzel Hospital, and Perry Funeral Home are indeed fact-specific, and would require consideration of the particular circumstances under which each class member entrusted the remains of their baby or fetus to Harper-Hutzel Hospital or another medical facility. However, the record does not otherwise provide any indication that plaintiff, because of a conflict between her interests and those of the other class members, would not be able to vigorously pursue the class action on behalf of the class. The main class included individuals who had the remains of their babies or fetuses transferred to Perry Funeral Home, or the WSU School of Mortuary Science, without the knowledge of the parents, and the two subclasses included (1) individuals who agreed to make anatomical gifts of their children's remains, but whose wishes were not honored, and (2) individuals who had the remains of their babies and fetuses transferred to Perry Funeral Home or the WSU School of Mortuary Science, and delayed certificates of death were falsified with respect to the remains. While the main class and the subclasses addressed slightly different situations, we are not persuaded that a significant conflict existed, or could arise, to the extent that plaintiff could not fairly or adequately represent the interests of the class.

Turning to the adequacy of plaintiff's counsel, the United States Court of Appeals for the Sixth Circuit, addressing the federal counterpart of MCR 3.501, has held that a class representative will satisfy the requirement of adequacy if they will vigorously pursue the interests of the class through counsel who is qualified, competent, "experienced and generally able to conduct the litigation." *Stout v JD Byrider*, 228 F3d 709, 717 (CA 6, 2000); see also *Int'l Union, United Auto, Aerospace, Agricultural Implement Workers of America v Gen Motors Corp*, 497 F3d 615, 626 (CA 6, 2007). All three defendants point to the fact that plaintiff did not present evidence of her attorneys' prior experience litigating class actions as the basis for their argument that plaintiff's attorneys were not qualified.

As plaintiff noted in her motion for class certification, in the three years before plaintiff initiated her cause of action, attorney Peter Parks had represented other parents pursuing actions against DMC, Harper-Hutzel Hospital, and Perry Funeral Homes, and in the course of such representation had gleaned relevant and valuable information that provided him with an important legal and factual background to represent plaintiff and the balance of the class. Attorney Parks had practiced law for 39 years, his areas of specialty were negligence and contract actions, and he was successful in obtaining verdicts in excess of six figures, as well as over a million dollars.

Attorney Parks had previously represented plaintiffs in an action against two funeral homes and a cemetery in cases in which the plaintiffs' decedents' remains were mishandled and not disposed of properly, with one case proceeding to a jury verdict, and the other resulting in a substantial settlement. Attorney Daniel Cieslak was experienced in litigating complex cases. Although attorney Parks conceded that he had not handled a class action before, he stated that with the assistance of attorney Cieslak, he would be well able to act as counsel for the class, and would be willing to consult the necessary resources and "bring additional people onboard" to assist if necessary. Attorney Parks also informed the court that other plaintiffs, the remains of whose children were allegedly mishandled by the DMC and Harper-Hutzel Hospital, were turned away by several attorneys before eventually retaining Parks.

In *Abby v Detroit*, 218 FRD 544, 548 (ED Mich, 2003), the defendant's only challenge with respect to the qualifications of the plaintiffs' counsel was that the plaintiffs' counsel had only litigated one prior class action. The district court, citing *Ballan v Upjohn Co*, 159 FRD 473, 487-488 (WD Mich, 1994), recognized that without a showing to the contrary, adequacy of counsel is routinely presumed, and " 'it is not reputation built upon past practice, but rather competence displayed by present performance, which demonstrates the adequacy of counsel in a class action.' " *Abby*, 218 FRD at 548, quoting *Ballan*, 548 FRD at 487. In the present case, there is no indication in the record that attorneys Parks and Cieslak were anything but competent and that they were well able to vigorously prosecute the class action by representing plaintiff and the potential class. While neither attorney had extensive experience with class actions specifically, given their professional experience and willingness to seek additional support if necessary, we are not left with a definite and firm conviction that the trial court made a mistake by determining that counsel was qualified to pursue the class action.

## e. SUPERIORITY

Perry Funeral Home argues that plaintiff did not satisfy the requirement of superiority because the mere fact that inconsistent verdicts, with some class members recovering successfully while others do not, does not necessarily mean that a class action is the superior method to adjudicate the claims, particularly if the inconsistent verdicts do not place the opposing party in the position of having to comply with one judgment while violating the terms of another. Perry Funeral Home also argues that the identification of other potential class members is available from public records, and because individual factual questions predominate over issues common to the class, a class action is not the superior method by which to adjudicate these claims. DMC and Harper-Hutzel Hospital argue that the trial court clearly erred by concluding that a class action is necessary to avoid a duplication of efforts and legal resources, given that the claims of the class members "will require substantial individualized evidence, analysis, and proof."

Plaintiff argues that the trial court correctly concluded that a class action was the superior method of adjudicating the claims of the class members, because of the large number of claimants, the risk of inconsistent verdicts, duplication of legal resources, and because the majority of the class members may not even be aware of their potential claims, inasmuch as they are not aware of the circumstances under which DMC, Harper-Hutzel Hospital, and Perry Funeral Home handled the final remains of their loved ones.

The main concerns underlying the requirement of superiority are those of practicality and manageability. *Hill*, 276 Mich App at 314. In *Zine*, 276 Mich App at 314, this Court noted the considerations guiding a court's analysis regarding whether this requirement has been satisfied:

> Our Supreme Court has explained that this fifth factor is "essentially the same" as the "convenient administration of justice" consideration required under former GCR 1963, and it is essentially a practicality test. *Dix v American Bankers Life Assurance Co of Florida*, 429 Mich 410, 413-414 ns. 4, 6,;415 NW2d 206 (1987). Furthermore, because "[a]lmost all claims will involve disparate issues of law and fact to some degree[, t]he relevant concern here is whether the issues are so disparate as to make a class action unmanageable." *Id*. at 419.

MCR 3.501(A)(2) sets forth the following factors for a court to consider in deciding whether the requirement of superiority has been satisfied.

> In determining whether the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice, the court shall consider among other matters the following factors:
>
> (a) whether the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (i) inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; or
>
> (ii) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
>
> (b) whether final equitable or declaratory relief might be appropriate with respect to the class;
>
> (c) whether the action will be manageable as a class action;
>
> (d) whether in view of the complexity of the issues or the expense of litigation the separate claims of individual class members are insufficient in amount to support separate actions;
>
> (e) whether it is probable that the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action; and
>
> (f) whether members of the class have a significant interest in controlling the prosecution or defense of separate actions.

-14-

We do not believe that the trial court clearly erred by concluding that plaintiff met the requirement of superiority. As the trial court correctly recognized, to try each case separately would have entailed significant duplication of judicial resources. Moreover, while the claims of each class member would involve the consideration of unique facts particular to each situation under which the remains of the individual's baby or fetus was provided to Harper-Hutzel Hospital or another medical facility, and there is an underlying risk that the discrete claim of each class member could result in inconsistent verdicts, the facts themselves would not be so disparate to make the management of the class action completely unmanageable.

## III. CONCLUSION

Although we conclude that plaintiff satisfied most of the requirements in MCR 3.501(A)(1), the trial court clearly erred by finding that plaintiff satisfied the commonality requirement in MCR 3.501(A)(1)(b). Because a plaintiff seeking certification of a class must demonstrate that all five requirements in MCR 3.501(A) are satisfied, and the commonality requirement was not satisfied in this case, we reverse the trial court's order granting plaintiff's motion for class certification and remand for further proceedings. Contrary to what DMC and Harper-Hutzel Hospital argue, the certification order did not require the disclosure of privileged information.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Collen A. O'Brien
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher

-15-