*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAURIE BREINER,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN and RACHEL A.
EUBANKS,

        Defendants-Appellees.

FOR PUBLICATION
December 1, 2022
9:20 a.m.

Nos. 356501, 356850
Court of Claims
LC Nos. 20-000175-MZ
           19-000023-MZ

LYNETTE HATHON and AMY JO DENKINS,
Individually and on Behalf of All Others Similarly
Situated,

        Plaintiffs-Appellees/Cross-Appellants,

v

STATE OF MICHIGAN,

        Defendant-Appellant/Cross-Appellee.

Before: BOONSTRA, P.J., and GADOLA and HOOD, JJ.

BOONSTRA, P.J.

In Docket No. 356501 of these consolidated appeals,[1] plaintiff Laurie Breiner ("Breiner") appeals by right the February 23, 2021 opinion and order of the Court of Claims granting summary disposition under MCR 2.116(C)(7) in favor of defendants, the State of Michigan (the state) and

---

[1] See *Breiner v Michigan*, unpublished order of the Court of Appeals, entered March 8, 2022 (Docket Nos. 356501, 356850).

Rachel A. Eubanks, the State of Michigan Treasurer, and denying Breiner's "motion for declaration" regarding the effect of 2020 PA 256 on plaintiff's claims.

In Docket No. 356850, the state appeals by leave granted,[2] and plaintiffs Lynette Hathon and Amy Jo Denkins (collectively, "the Hathon plaintiffs") cross-appeal individually and on behalf of all others similarly situated, the February 22, 2021 opinion and order of the Court of Claims granting the Hathon plaintiffs' motion to certify the class. The court denied the state's motion for reconsideration. The Court of Claims stayed the matter pending this Court's decision. We affirm in both docket numbers.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

### A. DOCKET NO. 356501 (THE BREINER CASE)

Breiner owned real property in Coldwater, Michigan. In March 2013, the property was forfeited for nonpayment of property taxes. On February 20, 2014, the state, as the foreclosing governmental unit (FGU) for Branch County, foreclosed upon the property and the Branch Circuit Court entered a judgment of foreclosure. Breiner owed a tax delinquency, including penalties and interest, of approximately $26,398.98. The state sold the property at public auction on August 6, 2014, for $205,000 and, in accordance with the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, at the time, retained all of the proceeds, including those in excess of what was needed to satisfy the outstanding taxes and associated fees or penalties (surplus proceeds), rather than returning the surplus proceeds to the property owner.

On July 17, 2020, the Michigan Supreme Court decided *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020), concluding that the government's retention of surplus proceeds from a tax-foreclosure sale amounts to an unconstitutional taking. On July 30, 2020, Breiner sued the state, the state treasurer, Branch County, and the Branch County treasurer in Branch Circuit Court for deprivation of the surplus proceeds. Breiner's complaint set forth four causes of action: (1) inverse condemnation under Article 10, § 2 of the Michigan Constitution against all defendants, (2) inverse condemnation under the Fifth Amendment of the United States Constitution through 42 USC 1983 against all defendants, (3) unjust enrichment against all defendants, and (4) a request for a writ of mandamus against the county and state treasurers, "to remediate the denial of Breiner's constitutional right to just compensation." The claims against the state were transferred to the Court of Claims.

The state moved for summary disposition under MCR 2.116(C)(6), (7), and (8). With respect to MCR 2.116(C)(6), the state argued that Breiner was a current member of the certified class of property owners in the Hathon case, and that the class was raising substantially similar claims seeking recovery of damages for surplus proceeds associated with the public auction of foreclosed properties. With respect to MCR 2.116(C)(7), the state argued that the statute of limitations in the then-current version of MCL 211.78l(1) applied by analogy to Breiner's claims because the statutory provisions expressed a clear legislative intent to limit the time period for

---

[2] *Hathon v Michigan*, unpublished order of the Court of Appeals, entered August 31, 2021 (Docket No. 356850).

claims against the government for constitutional violations related to foreclosure proceedings. The state argued that Breiner had two years from the date of the foreclosure sale in which to bring her claims—or two years from August 6, 2014. Breiner's complaint was filed almost four years after that date.

The state also argued that Breiner's claims were barred by the notice provisions of MCL 600.6431. The state contended that Breiner had failed to file, within one year after the foreclosure sale, a written claim or a written notice of intention to file a claim against the state under MCL 600.6431(1). The state also argued that Breiner's claims were for property damage and that Breiner had failed to file the claim or notice under subsection MCL 600.6431(4) within six months after the foreclosure sale. Further, the state argued that if Breiner had complied with the notice provisions of MCL 600.6431, or if the statute was not applicable, Breiner's claims would still be barred because the action was not filed within three years after the foreclosure sale as provided in MCL 600.6452(1). Finally, the state argued that if Breiner's claims were not barred by an applicable notice or limitations period, the claims were barred by res judicata because they were or should have been raised in the 2014 foreclosure proceeding.

With respect to MCR 2.116(C)(8), the state argued that Breiner failed to state an inverse condemnation claim under the Fifth Amendment to the United States Constitution through 42 USC 1983 because the state and its departments are not "persons" as to whom relief can be granted under 42 USC 1983. The state also argued that Breiner failed to state a claim for a writ of mandamus because, prior to the Supreme Court's decision in *Rafaeli*, there was no legal precedent creating a post-foreclosure property interest in the surplus proceeds, nor was there any legal duty on the part of FGUs to return such proceeds. The state argued that *Rafaeli* should be given only prospective application. Alternatively, the state maintained that even if *Rafaeli* were applied retroactively, the Supreme Court did not create a process for the return of the surplus proceeds and, therefore, there was no clear legal requirement that the state immediately return any surplus proceeds to Breiner.

On November 9, 2020, the Court of Claims entered an order granting Breiner's motion to stay the case pending the court's decision on the competing motions for summary disposition and the state's motion to revoke class certification in the Hathon case. Before the Court of Claims rendered a decision in the Hathon case, the Michigan Legislature, in response to *Rafaeli*, amended the GPTA to provide a limited mechanism for obtaining surplus proceeds after a tax-foreclosure sale. See 2020 PA 256, effective December 22, 2020. The parties filed supplemental briefs regarding the effect of PA 256.

The Court of Claims issued an opinion and order granting the state's motion to revoke class certification in the Hathon case on December 4, 2020, as will be discussed further in Part I(B) of this opinion. The court issued its decision in Breiner's case on February 23, 2021, granting summary disposition in favor of the state under MCR 2.116(C)(7) on the ground that Breiner's complaint was barred by the applicable notice provision of the Court of Claims Act, MCL 600.6401 *et seq*., and by the three-year statute of limitations found in MCL 600.6452(1). The court also found that Breiner's attempt to avoid the statute of limitations by relabeling her claim as a request for the issuance of a writ of mandamus was ineffective, and that the attempt failed to acknowledge that MCL 600.6452 applied regardless of the nature of the claim.

## B.  DOCKET NO. 356850 (THE HATHON CASE)

The Hathon plaintiffs jointly owned real property in Owosso, Michigan.  On February 9, 2018, the state, as the FGU for Shiawassee County, foreclosed upon the property and the Shiawassee Circuit Court entered a judgment of foreclosure.  The Hathon plaintiffs owed a tax delinquency, including penalties and interest, of approximately $5,200.  According to the Hathon plaintiffs, the property had a fair market value of $67,398.  The state sold the property at public auction on August 9, 2018, for $28,250, and again retained the surplus proceeds.  On January 15, 2019, the Hathon plaintiffs filed a notice of intention to file a claim in the Court of Claims.  On January 29, 2019, the Hathon plaintiffs, individually and on behalf of other similarly situated individuals from the counties of Keweenaw, Luce, Iosco, Mecosta, Clinton, Shiawassee, Livingston, and Branch, sued the state and Department of Treasury employee Patricia A. Simon, in her individual and official capacities, for deprivation of the surplus proceeds.  The complaint set forth seven causes of action: (1) preemption, (2) inverse condemnation, (3) a taking under Article 10, § 2 of the Michigan Constitution, (4) a taking under the Fifth Amendment of the United States Constitution, made applicable to the state under the Fourteenth Amendment, (5) a taking under the Fifth Amendment, made applicable through 42 USC 1983, (6) excessive fines under the Eighth Amendment, and (7) excessive fines under Article 1, § 16 of the Michigan Constitution.

The Hathon plaintiffs' prayer for relief included a request for damages equal to the difference between the tax delinquency and the sale price of the home or, alternatively, if the property was sold for less than fair market value, the difference between the tax delinquency and the fair market value of the home.  They also sought additional damages totaling 125% of the fair market value if the Court of Claims concluded that it was a principal residence taken for public use.

The Hathon plaintiffs moved for class certification.  The state argued in response that the Hathon plaintiffs had failed to adequately address each element required by MCR 3.501 to allow the case to proceed as a class action.  The court certified the case as a class action on June 7, 2019.

On June 10, 2019, the state moved for summary disposition under MCR 2.116(C)(8).  The state argued that the Hathon plaintiffs had no remaining property interest at the time of the foreclosure sale because title to the property had vested in the FGU as of the end of the redemption period.  The state argued that the Hathon plaintiffs had failed to take advantage of a myriad of options for seeking relief before the redemption period expired.  Therefore, the state asserted, the Hathon plaintiffs were not entitled to recover surplus proceeds for a property they did not own.  The state also argued that the foreclosure did not constitute an excessive fine in violation of the Eighth Amendment and Article 1, § 16 of the Michigan Constitution because it did not constitute punishment for a criminal offense.

The Hathon plaintiffs responded that the United States Supreme Court had held that seizure of excess equity, which was what they were alleging, violated the Fifth Amendment.  They also maintained that the constitutional prohibition against excessive fines applies in both the criminal and civil settings.  Here, the Hathon plaintiffs argued, the 40 percent interest penalty and other statutory fees constituted an excessive fine.  They argued that they were not collaterally attacking the foreclosure judgment and that the events out of which their claims arose occurred after the

entry of the judgment of foreclosure when the state retained the surpluses of equity beyond the delinquent taxes, costs, fees, and interest through the unconstitutional enforcement of the GPTA.

The Court of Claims issued its decision in an opinion and order on August 13, 2019. The court concluded that the Hathon plaintiffs had stated a viable takings claim under the Fifth Amendment to the United States Constitution and under Article 10, § 2 of the Michigan Constitution, observing that "the state's ability to take property in satisfaction of a debt is not unfettered but is instead necessarily and reasonably restrained by the amount actually owed." The court concluded that the Hathon plaintiffs had "stated a valid constitutional claim with respect to the uncompensated taking of surplus proceeds following a foreclosure sale."

On September 21, 2020, after our Supreme Court decided *Rafaeli*, the Hathon plaintiffs moved for summary disposition under MCR 2.116(C)(10), arguing that *Rafaeli* had rendered a large portion of the class's arguments "successful" through the holding that the Michigan Constitution requires the return of surplus proceeds to former property owners. The Hathon plaintiffs contended, however, that the remedy provided in *Rafaeli* was incomplete, because under the Fifth Amendment, property owners can recover the fair market value of the property minus the delinquent taxes, interest, penalties, and fees. Alternatively, they asserted that the difference between fair market value and delinquent taxes, interest, penalties, and fees was recoverable as an excessive fine under Article 1, § 16 of the Michigan Constitution.

The state responded that *Rafaeli* constituted a fundamental change in law and practice and therefore must be applied prospectively only. The state also argued that any claims for takings that occurred more than six months before the Hathon plaintiffs filed their January 15, 2019 notice of intent to file a claim were barred under MCL 600.6431(4). And if not barred by the six-month notice requirement, it argued, most of the claims of the purported class would be barred by the two-year statute of limitations in MCL 211.78l.

On October 7, 2020, the state moved for partial summary disposition. As in its response to the Hathon plaintiffs' motion, the state argued that the Hathon plaintiffs' claims were barred because *Rafaeli* had established a new rule of law and therefore only applied prospectively. Additionally, the state argued that *Rafaeli* had rejected the argument that the fair market value of sold properties must be used when calculating any surplus. The state further argued that the limitations period was two years, meaning that claims for surplus proceeds for claims that accrued prior to July 15, 2018, were barred. The state also argued that the notice provision in MCL 600.6431(1) applied, and that the general statute of limitations in MCL 600.6452(1) set the maximum limitations period at three years for claims brought against the state.

Also on October 7, 2020, the state moved to revoke and decertify the class, arguing that, in light of the *Rafaeli* decision that resolved the common legal issue of liability, the class was both overinclusive and underinclusive, and failed to satisfy MCR 3.501. The state argued that after *Rafaeli*, the predominate remaining claims were not common, but were disparate, highly individualized claims that turned on interests and priorities realized for each parcel, in each county, for each year.

The Court of Claims issued an opinion and order regarding the parties' competing motions for summary disposition and the state's motion to revoke and decertify class-action status on

December 4, 2020. The Court of Claims rejected defendant's argument that plaintiffs' claim was barred because *Rafaeli* did not apply retroactively. Next, the Court of Claims found that the one-year notice provision in MCL 600.6431(1), and not the six-month notice provision in MCL 600.6431(4), applied to the Hathon plaintiffs' constitutional claims; the court found that the named plaintiffs' notice was timely. The court also found that the three-year statute of limitations in MCL 600.6452(1) applied to the Hathon plaintiffs' claims against the state. The court rejected the state's argument that then-MCL 211.78l(3) applied. The court also rejected the Hathon plaintiffs' argument that the three-year statute of limitations in MCL 600.6452(1) did not begin to run until August 13, 2019, when the Court of Claims ruled that the Hathon plaintiffs had a cause of action for inverse condemnation for surplus proceeds following the tax-foreclosure sale.

The court also found that *Rafaeli* expressly rejected the idea that "just compensation" required that the Hathon plaintiffs be awarded the fair market value of their properties. The court also found that the forfeiture of equity held by the Hathon plaintiffs in their property did not violate Article 1, § 16 of the Michigan Constitution and that the prohibition against the imposition of excessive fines was not implicated.

On December 10, 2020, the Court of Claims granted the Hathon plaintiffs' motion for reconsideration of the December 4, 2020 opinion and order. The court amended its prior opinion and order to state that the motion to revoke class certification was granted without prejudice to the Hathon plaintiffs refiling a motion "to seek class certification in accordance with the more narrowly defined class described in the court's December 4, 2018 [sic] opinion and order, which held that only certain, timely claims were eligible for compensation, and that only those claims which fit the *Rafaeli* requirements for relief were eligible for compensation."

The Hathon plaintiffs subsequently moved to recertify an amended class. Before the state responded to the motion, the Legislature enacted 2020 PA 256, which made a number of amendments to the GPTA and established a procedure for claimants to submit claims for an interest in any applicable remaining proceeds following a property tax-foreclosure sale under MCL 211.78m. In particular, MCL 211.78t(1) provided that a claimant may submit a notice of intention to claim surplus proceeds. The statute contained different provisions for claims arising out of foreclosed properties sold after July 17, 2020—the date *Rafaeli* was issued—and for property sold before July 18, 2020. For property transferred or sold before July 18, 2020, both of the following applied:

> (*i*) A claim may be made only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket No. 156849, applies retroactively.
>
> (*ii*) Subject to subparagraph (*i*), the notice of intention must be submitted pursuant to subsection (6).[3] [MCL 211.78t(1)(b)(*i*)-(*ii*).]

The parties then filed supplemental briefs addressing the constitutionality of PA 256.

---

[3] Subsection (6), MCL 211.78t(6), contained certain notice requirements a claimant must satisfy.

In an "opinion and order certifying class action" issued on February 22, 2021, the Court of Claims concluded that the plain language of MCL 211.78t demonstrated that the statute did not apply to the Hathon plaintiffs' claims. The Court of Claims then rejected the state's contention that if MCL 211.78t did not apply the Hathon plaintiffs were precluded from bringing an action for relief. The court also granted the Hathon plaintiffs' motion to certify the class. The court explained that it had revoked class certification in December 2020 because plaintiffs had not provided information on how many plaintiffs would be entitled to compensation under the reasoning of *Rafaeli*. The court concluded that the Hathon plaintiffs had rectified that failure and had identified enough possible plaintiffs to establish the numerosity requirement. Regarding the remaining requirements, the court relied on the analysis set forth in its June 7, 2019 opinion and order certifying the original class.

The court defined the class as follows:

> All persons and entities who, from January 15, 2018,[ ] through the final order in this matter, had real property in the counties of Keweenaw, Luce, Iosco, Mecosta, Clinton, Shiawassee, Livingston, and Branch that was foreclosed upon by the State of Michigan under the General Property Tax Act, MCL 211.78, which was then subsequently sold at tax auction for an amount exceeding the minimum bid and who were not refunded the excess/surplus equity as described by the Michigan Supreme Court in *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020).

These appeals and cross-appeals followed. The Hathon plaintiffs' bypass application was denied by our Supreme Court. *Hathon v Michigan*, ___ Mich ___; 959 NW2d 720 (2021).

## II. DOCKET NO. 356501 (THE BREINER CASE)

In Docket No. 365501, Breiner argues that the Court of Claims erred by dismissing her case on notice/statute of limitations grounds, and further argues that PA 256 is unconstitutional as applied to her claims. Because we affirm the court's dismissal on the former grounds, we find it unnecessary to consider Breiner's constitutional challenge to PA 256.

### A. STANDARD OF REVIEW

This Court reviews de novo a ruling by the Court of Claims on a motion for summary disposition. *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 647; 852 NW2d 865 (2014). Summary disposition is appropriate under MCR 2.116(C)(7) if the claim is barred by the applicable statute of limitations, among other things. *Id*. at 288. In reviewing a motion under subrule (C)(7), a court accepts as true the plaintiff's well-pleaded allegations of fact, construing them in the plaintiff's favor, and must consider affidavits, pleadings, depositions, admissions, and any other admissible documentary evidence submitted by the parties, to determine whether a genuine issue of material fact exists. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). Whether a claim is barred by the statute of limitations and the application of equitable tolling are questions of law that we review de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). We review de novo issues of statutory interpretation. *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 179; 931 NW2d 539 (2019).

-7-

## B. ANALYSIS

Breiner argues that the Court of Claims erred by holding that the notice provision of MCL 600.6431(1) applied to her claims, and that Breiner did not satisfy the requirements of that provision. We disagree.

Under MCL 600.6419(1) of the Court of Claims Act, the Court of Claims has exclusive jurisdiction over the following matters:

> (a) To hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court.

At the time Breiner's claim accrued on August 6, 2014,[4] when her property sold for an amount in excess of the tax debt, MCL 600.6431(1) provided:

> No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.

"The purpose of MCL 600.6431 is to establish those conditions precedent to pursuing a claim against the state." *Fairley v Dep't of Corrections*, 497 Mich 290, 292; 871 NW2d 129 (2015). "Courts may not engraft an actual prejudice requirement or otherwise reduce the obligation to comply fully with statutory notice requirements." *McCahan v Brennan*, 492 Mich 730, 746-747; 822 NW2d 747 (2012) (addressing and construing MCL 600.6431).

Breiner argues that notice of her claims against the state was provided on July 31, 2015, because she was a putative class member in a takings case filed by the plaintiffs in another matter. The Court of Claims concluded that Breiner's attempt to satisfy MCL 600.6431(1) through a complaint filed by the plaintiffs in that case was ineffective because the class was never certified

---

[4] For purposes of MCL 600.6431(1), a claim accrues at the time the wrong upon which a claim is based was done. *Mays v Governor*, 506 Mich 157, 182; 954 NW2d 139 (2020), citing MCL 600.5827. A "wrong" occurs on the date that the defendant's conduct harmed the plaintiff. *Mays*, 506 Mich at 182. "A claim does not accrue until each element of the cause of action, including some form of damages, exists." *Id*. (citation omitted). In *Rafaeli*, 505 Mich at 476-477, the Court held that once a tax-foreclosure sale produces a surplus, the former owner may make a claim for the surplus proceeds.

and because Breiner was not a claimant in that case. We agree. Breiner does not cite any authority in support of her assertion that notice was "fulfilled" or "alternatively substantially complied with under these circumstances." To comply with MCL 600.6431(1), Breiner needed to file a notice of intent, or bring a claim against the state, within one year of August 7, 2014.[5] The Court of Claims properly held that Breiner's complaint was barred by the notice provision in MCL 600.6431(1).

Breiner also argues that applying the notice requirement of MCL 600.6431 to a constitutional claim is unlawful. However, this Court has rejected the same argument and held that MCL 600.6431 applies to all claims filed in the Court of Claims, including constitutional claims. See *Rusha v Dep't of Corrections*, 307 Mich App 300, 310; 859 NW2d 735 (2014).

Because Breiner's failure to comply with the statutory notice requirement of MCL 600.6431(1) is dispositive, her additional arguments concerning the Court of Claims' conclusion that Breiner additionally failed to file her claim within the three-year period of limitations under MCL 600.6452(1) need not be considered. Further, as stated, we need not address her arguments concerning the constitutionality of PA 256 as applied to her case. In any event, the Court of Claims expressly declined to consider this issue, and did not base its grant of summary disposition on the application of PA 256 to Breiner's claims. Breiner was therefore not aggrieved by a decision of the trial court regarding this issue. MCR 7.204(A); *J W Hobbs Corp v Dep't of Treasury*, 268 Mich App 38, 52; 706 W2d 460 (2005).

### III. DOCKET NO. 356850 (THE HATHON CASE)

In Docket No. 356850, the state argues that the Court of Claims erred by holding that MCL 211.78t, as amended by PA 256, did not apply to the Hathon plaintiffs' claims (and, relatedly, by holding that *Rafaeli* did apply to those claims) and by certifying a class action. In their cross-appeal, plaintiffs argue that the trial court erred by holding that the notice requirements of MCL 600.6431 applied to the class's inverse condemnation claims. We disagree in both respects.

### A. APPLICABILITY OF MCL 211.78t

The state argues that the Court of Claims erred by holding that MCL 211.78t did not apply to the Hathon plaintiffs' claims. We disagree. We review de novo issues of statutory interpretation. *Bauserman*, 503 Mich at 179. We review de novo as a question of law whether a judicial decision applies retroactively. *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 168; 909 NW2d 38 (2017).

---

[5] Breiner suggests that the notice provision does not apply to the claims against defendant Eubanks. However, Eubanks was sued in her official capacity as state treasurer. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Mays v Snyder*, 323 Mich App 1, 88; 88; 916 NW2d 227 (2018), aff'd 506 Mich 157 (2020) (quotation marks and citation omitted). And MCL 600.6431(1) specifically refers to claims against "departments."

In *Rafaeli*, our Supreme Court concluded that the government's retention of surplus proceeds after a tax-foreclosure sale amounts to an unconstitutional taking. In response to *Rafaeli*, the Michigan Legislature amended the GPTA to provide a limited mechanism to obtain surplus proceeds after a tax-foreclosure sale. See 2020 PA 256. At issue is the meaning of the following portion of MCL 211.78t:

> (1) A claimant may submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under [MCL 211.78m] subject to the following:
>
> (a) For foreclosed property transferred or sold under section 78m after July 17, 2020, the notice of intention must be submitted pursuant to subsection (2).
>
> (b) For foreclosed property transferred or sold under section 78m before July 18, 2020, both of the following:
>
> (i) A claim may be made only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively.
>
> (ii) Subject to subparagraph (i), the notice of intention must be submitted pursuant to subsection (6).
>
> (2) For foreclosed property transferred or sold under section 78m after July 17, 2020, by the July 1 immediately following the effective date of the foreclosure of the property, a claimant seeking remaining proceeds for the property must notify the foreclosing governmental unit using a form prescribed by the department of treasury. . . .

Prior to *Rafaeli*, there was no available mechanism under the GPTA for a party to seek reimbursement of surplus funds generated in a foreclosure sale. Once *Rafaeli* was issued, the Legislature responded by providing such a mechanism in the amended version of MCL 211.78t. The Legislature determined that there was a need to draw a line between claims regarding property sold after July 17, 2020 (the date *Rafaeli* was issued) and property sold before July 18, 2020. MCL 211.78t(1)(a) and (b).

In *Proctor v Saginaw County Board of Commissioners*, ___ Mich App ___, ___; ___ NW2d ___(2022), lv pending, slip op at 14, as in this case, the properties "were sold under § 78m 'before July 18, 2020,' which MCL 211.78t(1)(b)(i) now covers specifying a mechanism for claiming the surplus proceeds from a tax sale by former property owners." This Court stated in *Proctor*:

> The statute indicates plaintiffs' claims would not be viable unless our Supreme Court issues a ruling that *Rafaeli* is to be applied retroactively. However, 2020 PA 256 had an effective date of December 22, 2020, and the Legislature did not specify that the new statute had retroactive application. Plaintiffs' lawsuits and claims of appeal were all filed well before the effective date. Further, despite the wording of MCL 211.78t(1)(b)(i), this Court is empowered to rule that *Rafaeli* applies to

-10-

plaintiffs' claims because they were pending on appeal at the time of the *Rafaeli* decision and the enactment of 2020 PA 256. See *Hathcock*, 471 Mich at 484; 684 NW2d 765; see also *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 155; 725 NW2d 56 (2006) ("[S]tatutes and amended statutes are to be applied prospectively unless the Legislature manifests an intent to the contrary."). MCL 211.78t(1)(b)(i) sets forth when a claim can be made, but plaintiffs had already made their claims before the *Rafaeli* decision and before the enactment of the statute. It would neither be logical nor just for the plaintiffs in *Rafaeli* to be entitled to relief, see *Rafaeli*, 505 Mich at 485; 952 NW2d 434, but the present plaintiffs denied relief, even though both sets of plaintiffs raised and preserved the pertinent issue. This result is further buttressed by the detailed analysis and conclusion in *Rafaeli* which our Supreme Court reached by consideration and application of the constitutional rights that existed at the time of the adoption of the 1963 Michigan Constitution. [*Proctor*, ___ Mich App at ___; slip op at 14-15.]

This Court noted that "[a]n exception to the general rule presuming retroactive [sic] application only is a statute that is remedial or procedural in nature and whose retroactive application will not deny vested rights." *Id.*; slip op at 15 n 13 (quotation marks and citation omitted; second alteration in original). This Court concluded that "[a]pplying MCL 211.78t(1)(b)(i) to deny plaintiffs an avenue for relief under *Rafaeli* would be denying them existing rights." *Id.* This Court further concluded that "our Supreme Court has indicated its intent that *Rafaeli* be applied to cases in which the parties are similarly situated to the named plaintiffs' claims in these cases." *Proctor*, ___ Mich App at ___; slip op at 15.[6]

In this case, the Hathon plaintiffs made their claims and raised and preserved the pertinent issue before the *Rafaeli* decision and before the enactment of 2020 PA 256. Even before the *Rafaeli* decision, the Court of Claims in this case had concluded that the Hathon plaintiffs could pursue an action for the taking of their real property. In light of *Proctor*, the Court of Claims properly concluded that PA 256 did not apply to the claims of the Hathon plaintiffs and the class as certified.

---

[6] Judicial decisions generally apply retroactively, *Davis*, 272 Mich App at 155, and the state concedes that *Proctor* held that *Rafaeli* applies retroactively. The state nonetheless argues that *Rafaeli* should be applied prospectively. Alternatively, the state suggests (supported by *amicus curiae* Michigan Association of County Treasurers) that any retroactive application of *Rafaeli* should be limited. However, the language from *Proctor* on which the state relies is not found in its discussion of *Rafaeli's* retroactivity, but rather in a discussion about whether the never-certified claims of putative class members—unlike those of the Hathon plaintiffs in this case—were properly raised and preserved. See *Proctor*, __ Mich App at ___; slip op at 15. Moreover, this Court has recently held that "*Rafaeli* should be given full retroactive effect." *Schafer v Kent Co*, ___ Mich App ___; ___; ___ NW2d ___ (2022), lv pending, slip op at 5. Both *Proctor* and *Schafer* have applications for leave to appeal pending in our Supreme Court; unless and until the Court determines the issue of *Rafaeli's* retroactivity, *Schafer* conclusively resolves this issue, and we will not revisit it. See MCR 7.215(C)(2) and (J)(1).

## B. CLASS CERTIFICATION

Defendant also argues that the Court of Claims erred by certifying the amended class of plaintiffs in this case. We disagree. This Court reviews de novo the proper interpretation and application of a court rule. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). We review for an abuse of discretion a trial court's decision to certify a class, and review its factual findings for clear error. *Id*. at 496.

MCR 3.501(A)(1) contains requirements for maintaining a class action. MCR 3.501(A)(1) provides that one or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if all of the following requirements are met:

> (a) the class is so numerous that joinder of all members is impracticable;

> (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

> (d) the representative parties will fairly and adequately assert and protect the interests of the class; and

> (e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

"These prerequisites are often referred to as numerosity, commonality, typicality, adequacy, and superiority." *Henry*, 484 Mich at 488. "[T]he action must meet all the requirements in MCR 3.501(A)(1); a case cannot proceed as a class action when it satisfies only some, or even most, of these factors." *A & M Supply Co v Microsoft Corp*, 252 Mich App 580, 597; 654 NW2d 572 (2002). The party seeking class certification bears the burden of establishing each of these prerequisites. *Henry*, 484 Mich at 500.

In its February 22, 2021 opinion and order, the Court of Claims focused on the numerosity element, because it had been the Hathon plaintiffs' failure to establish this element that had resulted in the court decertifying the class in December 2020. With respect to the remaining elements— MCR 3.501(A)(1)(b)–(e), the court adopted its analysis set forth in its June 7, 2019 opinion and order. On appeal, the state now argues that the Hathon plaintiffs failed to establish numerosity, commonality, typicality, and superiority.

In essence, the state argues that the elements of commonality, typicality, and superiority, regardless of whether they were satisfied previously, are now definitively *not* satisfied in light of *Rafaeli*. We disagree.

The state argues that there are no common issues of fact or law left to adjudicate after *Rafaeli* and that a class action therefore is not a superior avenue to resolve the putative class members' claims. It argues that because the common legal issue has been resolved, what remains

are individualized factual inquiries specific to each foreclosed property that would predominately determine whether and in what amount each owner may be entitled to relief.

To establish commonality, the proponent of class certification must establish that issues of fact and law common to the class "predominate over those issues subject only to individualized proof." However, it is not sufficient to merely raise common questions. The "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Duskin v Dep't of Human Servs*, 304 Mich App 645, 654; 848 NW2d 455 (2014) (citations omitted; ellipsis in original). "In other words, commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id*. at 654-655 (quotation marks and citation omitted). This factor does not require all issues in the litigation to be common, but merely requires the common issue or issues to predominate over those that require individualized proof. *A & M Supply Co*, 252 Mich App at 599. This also relates to the superiority element. "The superiority and commonality requirements are related because 'if individual questions of fact predominate over common questions, the case will be unmanageable as a class action.' " *Duskin*, 304 Mich App at 658 (citation omitted).

"Typicality is concerned with whether the claims of the named representatives have the same essential characteristics of the class at large. As does commonality, typicality requires that the class representatives share a common core of allegations with the class as a whole." *Duskin*, 304 Mich App at 656-657 (quotations marks and citation omitted).

In this case, with respect to the elements of commonality and typicality, the Court of Claims concluded that the elements were established because the common core of the allegations was that (1) the state, as FGU, unconstitutionally retained the surplus proceeds from the sale of the plaintiffs' real property after foreclosure, and (2) the state had "destroyed equity" in the sold property by selling the property at less than market value. The class of plaintiffs seeking certification, including the named plaintiff, therefore alleged that they had suffered the same injury. *Duskin*, 304 Mich App at 654-655. These allegations remain the same after *Rafaeli*. Although *Rafaeli* will undoubtedly feature heavily in the resolution of the class's claims, the decision did not, itself, hold the state liable for the injuries that the plaintiffs allege. We reject the states's argument that the fact that the class can now cite *Rafaeli* in support of some of its claims somehow requires decertification of that class. In essence, the state would punish class members for being the beneficiaries of a favorable decision that may assist them in litigating their claims.[7]

Further, we also reject, as did the Court of Claims, the argument that commonality and typicality cannot be established because the class certification does not consider whether the properties at issue were encumbered by liens. MCL 211.78k(5)(c) extinguishes all liens upon the issuance of a judgment of foreclosure except for "future installments of special assessments and

---

[7] Practically, a decertification of the class on the basis of *Rafaeli* might also penalize class members who would then have to file individual actions that would be newly subject to the notice requirements of MCL 600.6431. Those issues have not, however, been briefed on appeal.

-13-

liens recorded by this state or the foreclosing governmental unit under the natural resources and environmental protection act."

Moreover, with regard to superiority, as the Court of Claims noted, the need to make individualized findings only relates to determining the amount of damages. We agree with the court that the individual issues in this case are not "so disparate" that a class action "would be unmanageable." *A&M Supply Co*, 252 Mich App at 602; see also *Hill v City of Warren*, 276 Mich App 299, 312; 740 NW2d 76 (2007) (holding that "the individualized determinations of the extent of damage will not predominate over the common questions of whether defendant is liable at all for damages").

Defendant also argues that plaintiffs failed to satisfy the numerosity element. We disagree. The proposed class includes the former owners of at least 625 parcels of real property, in several different counties. At this stage of the proceedings, we agree with the Court of Claims that plaintiffs have carried their burden of showing that joinder of all members is impracticable. MCR 3.501(A)(1)(A); see also *Hill*, 276 Mich App at 310.

We conclude that the Court of Claims did not abuse its discretion by certifying the class. *Henry*, 484 Mich at 496.

## C.  CROSS-APPEAL

In their cross-appeal, plaintiffs argue that the Court of Claims erred by holding that the notice requirements of MCL 600.6431(1) applied to the inverse condemnation claims of the class. We disagree.

Although plaintiffs assert that the statute of limitations for inverse condemnation claims is the general six-year limitations period found in MCL 600.5813, see *Hart v Detroit*, 416 Mich 488, 505; 331 NW2d 438 (1982), they provide no authority for their assertion that, even if true,[8] this assertion means that MCL 600.6431(1) therefore does not apply. MCL 600.6431(1) is a notice provision, rather than a limitations period. See *Rusha*, 307 Mich App at 312. MCL 600.6431(1) does not require that a suit be commenced within one year of the accrual of any claim against the state, nor does it preclude the operation of the appropriate limitations period for a particular action; rather, it is a condition precedent to sue the state. *McCahan v Brennan*, 291 Mich App 430, 433; 804 NW2d 906 (2011).

Moreover, as noted earlier in this opinion, this Court has held that MCL 600.6431 applies to all claims filed in the Court of Claims, including constitutional claims. *Rusha v Dep't of Corrections*, 307 Mich App at 310. Although plaintiffs assert that such an application is harsh and unreasonable, they have not demonstrated that application of the notice period to the class's inverse condemnation claims is so "harsh and unreasonable in [its] consequences that [it] effectively divest[s] plaintiffs of the access to the courts" intended by constitutional guarantees of substantive

---

[8] We note that this Court has held that the applicable statute of limitations for inverse condemnation claims against the state is three years, not six. See *Gleason v Mich Dep't of Transportation*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

rights.  Plaintiffs were, or should have been, aware at the time of foreclosure that the state was the FGU.  Had they wished to retain the option to pursue an inverse condemnation claim against the state, "[p]roviding such notice would have imposed only a minor procedural burden."  *Rusha*, 307 Mich App at 312.  The Court of Claims did not err by holding that MCL 600.6431(1) applies to the inverse condemnation claims of the class.

Affirmed in both docket numbers.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Noah P. Hood